FEDERAL DEPOSIT INSURANCE
CORPORATION

v.

Robert R. RODENBERG.

Civ. No. Y–81–3057.

United States District Court,
D. Maryland.

Sept. 22, 1983.

Leslie J. Polt, Steven K. Fedder, Baltimore, Md., for plaintiff.

E. Stephen Derby, Karen L. Myers Zauner, Baltimore, Md., for defendant.

JOSEPH H. YOUNG, District Judge.

## MEMORANDUM OPINION AND ORDER

This action is brought by the Federal Deposit Insurance Corporation (FDIC) against Robert Rodenberg, guarantor of several notes which were purchased by the FDIC from a bank in distress under 12 U.S.C. § 1823. In the complaint, the FDIC, as the assignee of the bank which was the payee of the notes, alleges that defendant, having personally guaranteed the notes, is now liable to it. The defendant answered, denying the allegations of the complaint and raising 21 defenses. The FDIC has filed a motion for summary judgment, claiming that there are no issues as to any material fact and that it is entitled to judgment as a matter of law. The interrogatories, affidavits, and deposition testimony which have been submitted to the Court indicate that—except for the amount of the debt—there is no genuine issue as to any material fact. Therefore, the Court will grant the plaintiff's motion for summary judgment as to liability, but will deny the motion as to damages.

## FACTS

The defendant in this action, Robert Rodenberg, was the president and principal stockholder of RRR & G, Inc., a real estate firm developing a tract of land in St. Mary's County, Maryland, called Wicomico Shores Yacht and Country Club. In April, 1973, RRR & G sought and received a letter from Farmers Bank of Delaware approving a line of credit at the bank up to $750,000.

As collateral, the bank assumed a security interest in the company's accounts receivable. One year later, the bank increased the company's line of credit to $900,000 on condition that Rodenberg personally guarantee payment of the loan by the corporation (which he did on March 28, 1974). A promissory note dated two years later agreed to repayment of the $900,000 debt. That note was signed by Rodenberg as representative of the corporation, and was personally guaranteed by the defendant "pursuant to" the earlier continuing guaranty. The company also executed deeds of trust to secure the debt covered by the promissory note (these deeds of trust were later voided as preferences by the bankruptcy court).

From the posture of the parties in this case, it would not be difficult to predict what happened next. Problems with sales at Wicomico Shores and with collecting on the installment contracts for sales of plots of land began to appear. RRR & G headed into bankruptcy and then reorganization. Just before RRR & G filed for bankruptcy, the FDIC discovered, in an audit of Farmers Bank, that the bank had several "questionable" loans outstanding, and agreed to bail out the bank. The FDIC purchased assets of the bank with a face value of $40 million for $32 million. Included in the assets assigned to the FDIC were the debts owed to Farmers Bank by RRR & G. With the company bankrupt, the FDIC, as assignee of the Farmers Bank, brought this action against Rodenberg individually as guarantor of the debts of the company.

Rodenberg's asserted defenses fall into several categories, which will be treated as follows: alleged flaws in the underlying debts (including failure of consideration, fraudulent inducement, breach of collateral contract), the FDIC's mismanagement of the collateral (failing to collect on overdue land installment contracts, permitting the property underlying the debt to deteriorate, allowing the trustee in bankruptcy of RRR & G to sell the underlying property at an unreasonably low sale price), failing to credit payments on the land contracts against the balance due on the debts, and certain defenses best characterized as miscellaneous

(statute of limitations, lack of application of the guaranty to certain debts—including loans by the FDIC to the RRR & G trustee in bankruptcy, failure to state a claim).

First, however, the defendant has raised a threshold issue which must be resolved before the other defenses can be discussed. The defendant maintains the FDIC may not succeed in its motion for summary judgment because it has only produced photocopies—not originals—of the documents which provide the basis of this action.

## FAILURE TO PRODUCE ORIGINALS

The defendant's initial challenge to the documents presented to the Court alleges that two of the most important documents in this case—the "continuing guaranty" executed by Rodenberg personally and the promissory note which he later guaranteed—were not properly authenticated and therefore could not be considered by the Court. In determining whether summary judgment should be granted, the Court may only consider evidence determined to be admissible under the Federal Rules of Evidence. *Utility Control Corp. v. Prince William Constr.*, 558 F.2d 716, 720 (4th Cir.1977). Therefore, without more, the plaintiff's summary judgment motion would have been subject to immediate dismissal. However, at the suggestion of the Court, a supplemental affidavit and extracts from the defendant's deposition were submitted by the plaintiff, showing that some of the documents were taken from the files of the FDIC (turned over by the Farmers Bank) and that other documents had been authenticated by the defendant. The documents have therefore been properly identified either by the defendant or under Rule 803(6) of the Federal Rules of Evidence, the so-called "business records" exception to the hearsay rule. Properly authenticated, the documents are admissible unless their admission is prohibited by some other provision of the Federal Rules of Evidence.

The defendant's remaining challenge to the documents is that two documents are not admissible because they are not "dupli-

cates" as defined under Rule 1001(4) and therefore do not qualify for admission under Rule 1003 (the "duplicate" exception to the "best evidence rule"). It is true that, in photocopying, portions of the documents were deleted. The defendant maintains that the missing margins of one document and the illegible portions of another make them inaccurate copies, which will not qualify as duplicates.

The decision as to whether the offered documents constitute accurate duplicates and can be accepted in evidence is "addressed to the sound discretion of the trial court, and in any case considerations of trustworthiness and fairness are paramount." 11 Moore's Federal Practice, § 1003.20 at x–15. Applying these standards, the Court finds that the submitted documents are accurate copies of the originals. Despite the missing margins and deleted portions, the terms of the continuing guaranty are clear, since only one, two, or at most three of the letters of the starting word on each line are omitted, and, in every relevant line, only one reasonable interpretation can be given to the language used. The promissory note (exhibit 7) is legible at every important point, save part of the signature of the defendant and the name of the witness. Since Rodenberg does not deny signing the documents—see Answer of Robert Rodenberg at ¶ 5—and the relevant terms of the promissory note and the guaranty are clear, the exhibits submitted by the plaintiff are admissible as duplicates.

In addition, once the movant for summary judgment has submitted affidavits making out a *prima facie* case, the opponent is required to come forward with counterproof in order to show genuine issues of fact. *Keller v. Dravo Corp.*, 441 F.2d 1239, 1245 (5th Cir.1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). The opponent must produce more than frivolous assertions, unsupported statements, illusory issues and mere suspicions. *Hales v. First Appalachian Corp.*, 494 F.Supp. 330, 333 (N.D.Ala.1980). Here, the defendant has admitted—or does not deny—signing the two documents in question, and the defendant has not suggested any interpretation of the documents contrary to that claimed by the plaintiff. Consequently, the Court finds there is no genuine dispute as to the fact that the defendant Rodenberg executed the continuing guaranty and the master promissory note, and that the terms of those agreements are set forth in the attachments to the plaintiff's motion for summary judgment (exhibits 6 and 7).

Having resolved the evidentiary issue, the Court will proceed to determine if the plaintiff is entitled to judgment as a matter of law. The defendant has raised a number of issues of fact. In considering a motion for summary judgment, the evidence presented to the Court must be construed in favor of the party opposing summary judgment—here, the defendant. *Cole v. Cole*, 633 F.2d 1083, 1090 (4th Cir.1980). Taking the allegations of the defendant as true, the Court has determined that the plaintiff is entitled to summary judgment as to the defendant's indebtedness.

## CLAIMED FLAWS IN UNDERLYING DEBTS

The defendant first claims that he is not liable to the FDIC because of fatal flaws in the underlying debts—that is, the obligations owing under the promissory note and the continuing guaranty.

### A. Failure of Consideration

In his answer to the complaint, the defendant asserts that the continuing guaranty is void because there is no consideration granted for it. However, the documents which were submitted—and were not challenged by the defendant—show that there was consideration for the defendant to execute the continuing guaranty. Exhibit 4 in support of plaintiff's motion shows that Farmers Bank agreed to increase the line of credit to RRR & G from $750,000 to $900,000 if Rodenberg would personally guarantee the debt (he did so less than two weeks later). The lack of consideration for the execution of the deed of trust, asserted by the defendant as his

21st defense, is irrelevant to this action, as the FDIC is suing on the continuing guaranty, not the deed of trust. Neither defense can be maintained, as a matter of law.

### B. Fraudulent Inducement and Breach of Collateral Contract

■ The defendant claims that his execution of the continuing guaranty was ·void because Farmers Bank had induced him to sign the guaranty through either fraudulent or negligent misrepresentations. In his answer to interrogatories, the defendant states that he bases his claim of fraud on promises allegedly made by a vice-president of the bank, claiming he was told that, as a result of his signing the continuing guaranty, loans to RRR & G would be increased. The defendant also asserts that he is not liable to the FDIC because the FDIC failed to loan RRR & G the further moneys it needed, and to which he alleges an officer of Farmers Bank agreed.

Even if true as alleged, the defenses fall under 12 U.S.C. § 1823(e), which provides, in pertinent part, that "no agreement which tends to diminish or to defeat the right, title or interest of the Corporation [the FDIC] in any asset acquired by it under this section ... shall be valid against the Corporation" unless the agreement meets certain requirements, including a requirement that the agreement be in writing and an official record of the bank. In this case, the defendant is claiming oral declarations, which are void—as against the FDIC—under § 1823(e).

Likewise, the claimed defenses for fraudulent and negligent inducement must fail. These defenses are based on the same representations dismissed as immaterial above, and may not be considered by the Court in evaluating the·FDIC's rights under the assets it acquired. To permit the defendant to raise these representations in a defense of fraudulent or negligent misrepresentation—while barring their admission as collateral agreements—would allow the defendant to make an "end run" around § 1823(e). *FDIC v. Lattimore Land Corp.,*

656 F.2d 139, 146 n. 13 (5th Cir.1981); *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir. 1982).

Consequently, the plaintiff is entitled to judgment as a matter of law as to defenses related to representations made orally by officers of Farmers Bank.

## MISMANAGEMENT OF COLLATERAL

■ The defendant, in opposition to the summary judgment motion, argues that any indebtedness based on his guaranty of the debts of RRR & G is extinguished because the FDIC failed to properly manage and dispose of the collateral which it held securing the debt. The FDIC counters that it did manage and dispose of the property in a commercially reasonable manner, and that, under the terms of the continuing guaranty, it had no duty to act in a commercially reasonable manner. The argument over whether the FDIC acted in a commercially reasonable manner constitutes a genuine dispute as to a factual matter, and summary judgment is inappropriate on this issue. Because the Court finds that the FDIC was under a duty to act in a commercially reasonable manner in disposing of the collateral—regardless of the terms contained in the guaranty—the dispute becomes material as to the amount of damages which the FDIC should be awarded. The Court will therefore deny summary judgment as to damages.

### A. Applicable Law

■ The first step in the analysis of whether the FDIC, as a government agency with special statutory powers, is excused from a creditor's general obligation to act in a commercially reasonable manner towards the collateral, is to determine what law should control this issue. After careful consideration, the Court will apply federal common law.

The determination to apply federal or state law to this matter is controlled by *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). In *Kimbell Foods,* the Court listed three factors which should be considered in determining which law to apply: whether

the federal program was one which by its nature required nationwide uniformity, whether adopting state law would frustrate the specific objectives of the federal program, and whether applying a federal rule would disrupt commercial relations predicated on state law. 440 U.S. at 728–29, 99 S.Ct. at 1458–59. Applying this analysis in *Gunter v. Hutcheson,* 674 F.2d 862, 869 (11th Cir.1982), the Eleventh Circuit determined that federal common law should be developed to address whether the FDIC would be protected, in collecting on notes which it had acquired from banks, from the debtor raising fraud claims which were unknown to the FDIC when it acquired the notes. The analysis under these factors is no less applicable to the issues of whether the FDIC must act reasonably when managing or disposing of collateral securing notes acquired from banks in distress: the program is grand in scale, and holding the FDIC to different standards of care in different states would frustrate its attempts to collect on the assets it acquires as it attempts to promote the stability of, and confidence in, the nation's banking system. *Gunter, supra,* 674 F.2d at 870. Applying a uniform rule of federal law would certainly be no less disruptive to commercial relations predicated on state law than the barring of fraud claims against the FDIC, as the court did in *Gunter.*

Therefore, the Court concludes that federal common law should apply to the question of whether the FDIC must act in a commercially reasonable manner in managing or disposing of collateral.

### B. Federal Common Law

Having determined that federal common law should apply, the next question is whether the federal common law requires the FDIC to act in a commercially reasonable manner in circumstances such as those presented here, particularly when the FDIC is suing a guarantor whose guaranty explicitly gives the creditor broad powers with regard to the collateral.

No decisions have been found or cited on this issue with regard to the FDIC. However, in analogous situations, courts have repeatedly held that government agencies are no different than private secured parties with regard to the duty of good faith owed to debtors in disposing of collateral.

Cases with regard to the practices of the Small Business Administration are particularly applicable. Like the FDIC, the SBA is a federal agency which may proceed against an individual who has personally guaranteed repayment of a loan taken out by a now-bankrupt entity. The action on the guarantee follows the agency's reimbursement of a private lending institution, in whole, or in part, for the unrecoverable debt. In the Fifth, Sixth, Seventh and Eighth Circuits, courts have adopted the rule that the SBA must act in a commercially reasonable manner in disposing of collateral, or recovery from the individual guarantor will be reduced or prohibited. *United States v. Willis,* 593 F.2d 247 (6th Cir.1979), *United States v. Terrey,* 554 F.2d 685 (5th Cir.1977), *United States v. Conrad Publishing,* 589 F.2d 949 (8th Cir.1978), *United States v. Warwick,* 695 F.2d 1063 (7th Cir.1982) (recovery upheld because sale commercially reasonable). In addition, a similar duty was imposed on the federal Economic Development Administration by the First Circuit in *Mendleson v. Maplewood Poultry Co.,* 684 F.2d 180 (1st Cir. 1982):

> The rule in the Eighth Circuit is that, as a matter of federal law, the sale of collateral must be "commercially reasonable" regardless of the terms of the guarantee. 684 F.2d at 184.

*Willis* is particularly instructive. In that case, the SBA had guaranteed a bank loan to a company which went bankrupt. The SBA repaid the bank for 90 percent of its losses on the loan, and then sued Willis and another guarantor of the loan for reimbursement. The defendants claimed that the SBA had acted in an unreasonable fashion in disposing of the assets of the company—the SBA passed up two private offers of $200,000 or more for the assets, and proceeded to net only about $42,000 at a public auction. The Court held that the

District Court was correct in applying federal common law to the case, and that the trial court correctly concluded that Article 9 of the Uniform Commercial Code supplied the correct standard for judging the secured party's behavior. Section 9–504(3) of the Uniform Commercial Code provides that sale or other disposition of the collateral "may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable."

The guaranty in *Willis* allowed the "secured party 'full power, in its uncontrolled discretion . . . to deal in any manner with the collateral,' including the power to realize on the collateral 'at any public or private sale or sales.'" 593 F.2d at 255. Such language gave the secured party even more discretion over the collateral than the clause in this case, which provided that:

> upon the non-payment of any debt, the repayment of which is hereby guaranteed, said bank is hereby irrevocably authorized to sell the described securities and/or property, or any part thereof, at public or private sale.

In *Willis*, as here, the government argued that the broad grant of authority prevented the guarantor from complaining of the method used in disposition of the property.

> The import of this argument appears to be that the above-quoted language, in conjunction with the fact that the guaranty was unconditional, relieved the SBA of any duty whatsoever to defendants in dealing with the collateral. Carried to its logical extreme, the Government's view would permit it to collect the indebtedness from the guarantor—even in a case where it had simply given the collateral away, or worse, destroyed it. *Id.*

The Sixth Circuit refused to countenance such conduct, as does this Court. Accordingly, it is held that the FDIC had an obligation, under federal common law, to act in a commercially reasonable manner with regard to the property involved, including the real estate and the land installment contracts. As noted by the FDIC,

though, all of its actions were affected to some extent by the bankruptcy court's control over the assets of RRR & G. The FDIC need only show that it acted in a commercially reasonable manner. Because the commercial reasonableness of the sale of the assets has been questioned by the defendants, the FDIC bears the burden of proof as to the reasonableness of its actions. *Willis*, 593 F.2d at 258.

██ The parties seem to have agreed on exactly what events transpired with regard to the disposition of the collateral and the actions taken by the trustee in bankruptcy. However, whether the disposition of the property was in fact undertaken in a commercially reasonable fashion is a question of fact, and therefore must be determined by the fact-finder. *United States v. Warwick*, 695 F.2d 1063, 1071 (7th Cir.1982).

### C. Dispositive Effect

The defendant—somewhat inconsistently—argues that state law should be applied in determining what effect the failure of FDIC, the secured party—to act in a commercially reasonable manner would have on the disposition of this case. Naturally, the defendant is arguing for state law because, he says, both Maryland and Delaware state law extinguish the liability of a guarantor where the secured party has failed to act in a commercially reasonable manner with regard to the collateral.

However, in all of the SBA cases which were cited by the defendant and which provide the foundation for the finding here that the FDIC has a duty to act reasonably with regard to the collateral, courts have held that the failure to act reasonably results, not in extinguishing the underlying debt, but in modifying it. A finding that a secured party acted unreasonably in disposing of collateral raises a rebuttable presumption that the "value of the collateral equalled the indebtedness assumed, thereby extinguishing the indebtedness unless the secured party rebuts the presumption." *Willis*, 593 F.2d at 259. *Accord: United States v. Conrad Publishing*, 589 F.2d 949, 955 (8th Cir.1978).

This Court is in agreement that a failure to act reasonably in disposing of collateral will only affect the amount of damages recoverable from the guarantor, not extinguish his liability. On this issue, as well as the issue of commercial reasonableness, the FDIC bears the burden of proof. Consequently, the FDIC may still recover, even if the jury finds that the collateral was not dealt with in a commercially reasonable fashion. But the FDIC must prove its damages in such a case: in other words, it must prove that the amount collected in a commercially reasonable sale would have been less than the underlying debt, and it would only be able to collect the difference.

## MISCELLANEOUS DEFENSES

Certain other defenses which go to liability may be summarily dispensed with. In his answer, the defendant claims that the FDIC complaint fails to state a claim upon which relief can be granted, that loans made to RRR & G were without recourse to the defendant, that the FDIC is subject to any defenses which the defendant could have raised in an action by Farmers Bank, and that the defendant's alleged guaranty was of no effect. The defendant's answers to interrogatories indicate that all of these defenses were based on other defenses which have already been dismissed, or have not been backed up or argued in the defendant's memorandum. These defenses are therefore dismissed.

The defendant also raised an objection based on the statute of limitations. His claim is barred by the FDIC's submission of two documents identified by the defendant in deposition testimony which successfully toll the statute of limitations.

The defendant also raises several defenses as to the amount of debts properly covered by the underlying continuing guaranty, and has charged the FDIC with failing to authenticate and document its claims for damages. The defendant is correct that the plaintiff to date has failed to substantiate—with admissible evidence—what damages are owed, and again, it would not be appro-priate to grant summary judgment as to damages.

The defendant also insists that his liability under the continuing guaranty and the promissory note is limited to $900,000, since that was the maximum liability under the continuing guaranty, and the promissory note was guaranteed "pursuant to" the earlier continuing guaranty. The plaintiff's submissions would appear to substantiate the defendant's claim. However, the defendant has not moved for summary judgment on this issue, and has submitted a motion in limine seeking a $900,000 limit on damages. The defendant's motion will be considered at a more appropriate time.

Accordingly, for the reasons stated herein, it is this 22nd day of September, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff's motion for summary judgment BE, and the same IS, hereby GRANTED as to liability;

2. That the plaintiff's motion for summary judgment BE, and the same IS, hereby DENIED without prejudice as to damages; and

3. That a copy of this Memorandum and Order be forwarded to all parties.