**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Robert V. VESTRING, Nadine C. Vestring, Stephen J. Vestring, Louis B. Vestring, Defendants.**

Civ. A. Nos. 84–2486–0 to 84–2489–0.

United States District Court,
D. Kansas.

Oct. 23, 1985.

Michael C. Manning, Mark W. McGrory, Brian E. Gardner, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Christopher A. Byrne, Office of Gen. Counsel, Federal Deposit Ins. Corp., Washington, D.C., for plaintiff.

Myron L. Listrom, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for defendants.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Pending before the court in these consolidated actions are the FDIC's motion for summary judgment and defendants' motion for leave to amend. For the reasons that follow, leave to amend will be denied and summary judgment will be entered in favor of the FDIC.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In considering such a motion,

the court must examine all evidence in the light most favorable to the opposing party. *Mogle v. Sevier County School District,* 540 F.2d 478, 482 (10th Cir.1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 57 L.Ed.2d 572 (1976). Where different inferences could reasonably be drawn from conflicting affidavits and depositions, summary judgment should be denied. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, when the movant has supported his motion with affidavits or other matters, the opponent's response must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). Finally, the Tenth Circuit requires a moving party to demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975).

Because a responsive pleading has been served and the FDIC objects to the proposed amendment, defendants may amend their answers only by leave of court. Fed.R.Civ.P. 15(a). Such leave "shall be freely given when justice so requires." *Id.* The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, leave to amend may be denied if the amendment itself would be futile. *Id.; Dickerson v. City Bank & Trust Co.,* 575 F.Supp. 872, 876 (D.Kan.1983).

Either with or without the requested amendment, defendants' allegations are insufficient to defeat the FDIC's motion for summary judgment. Because the amendment would be futile, it will be denied on that ground. Nonetheless, for purposes of the summary judgment motion, we will give the defendants the benefit of their amended allegations. As so amended, their allegations (in combination with the uncontroverted facts set forth by the FDIC) are as follows.

On October 10, 1984, the Rexford State Bank was declared insolvent and the District Court of Thomas County, Kansas, appointed the FDIC as its receiver. Acting in its receivership capacity, the FDIC sold to the FDIC in its corporate capacity all assets of the bank not acquired by a successor bank. Among the assets sold to FDIC-Corporate were each of the notes underlying these actions.

All four defendants executed one of these notes on July 2, 1984. Defendants Robert, Nadine, and Louis Vestring executed notes in the amount of $50,000.00, while defendant Stephen Vestring executed a $46,459.74 note. All four notes were made payable to the bank and were due on October 2, 1984. Interest was to accrue at the rate of fifteen percent (15%) per annum until maturity, and at nineteen percent (19%) per annum thereafter until paid in full.

The notes were executed as a result of an oral agreement between Nasib Ed Kalliel (as agent for the bank) and defendant Robert Vestring (for himself and as agent for the other three defendants). Through that agreement, the bank agreed to lend an amount of money to defendants. Those defendants then executed the promissory notes to *temporarily* evidence their obligation to repay that loan. At the same time, the bank, acting through its agent, agreed to rewrite those loans on a long-term basis and at a reduced interest rate, with a "new note" to be executed by each defendant before the original notes' due date of October 2, 1984. The bank subsequently failed to adhere to its agreement to rewrite these notes on a long-term basis. The FDIC had no actual knowledge of this agreement before it purchased the notes.

(We note that the amendment requested by defendants and incorporated into the above recitation of facts raises no new legal issues. As originally framed, defendants' respective answers and counterclaims contained essentially the same allegations, with the sole difference being that the bank's agent was alleged to have been its

chief executive officer, Mr. C.J. Moeder, rather than Mr. Kalliel. The following legal discussion would thus be equally applicable to defendants' unamended answers and counterclaims.)

■ Unless defendants can point to a viable defense, they are obviously liable to the FDIC for the full amount of principal and accrued interest represented by these notes. Defendants do assert the following three affirmative defenses: (1) fraud in the inducement, (2) estoppel, and (3) failure of consideration. Each defendant also asserts a counterclaim based on a breach of the oral agreement between defendant Robert Vestring and Mr. Kalliel (Count I) and on Mr. Kalliel's fraudulent misrepresentations (Count II). The FDIC correctly asserts, however, that none of defendants' affirmative defenses or counterclaims is effective as against the FDIC.

First, the FDIC claims holder in due course status as to each of these four notes. Because FDIC-Corporate purchased these notes as part of a bulk transaction not in the regular course of business of the bank, it failed to obtain holder in due course status under the Kansas Uniform Commercial Code. K.S.A. 84–3–302(3)(c); *see also id.*, Official U.C.C. Comment 3, ¶ 2; *Gunter v. Hutcheson*, 674 F.2d 862, 872 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). However, the federal courts have not confined the FDIC to reliance on applicable state holder in due course rules. Rather, they have enunciated as a matter of federal common law a holder in due course rule that abandons the "regular course of business" requirement. The Sixth Circuit, for example, has phrased the federal rule as follows:

> When the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defenses against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*FDIC v. Wood*, 758 F.2d 156, 161 (6th Cir. 1985); *see also Gunter*, 674 F.2d at 873.

As indicated above, the FDIC had no actual knowledge of the oral agreement between the bank and defendants to substitute long-term, low interest notes for the notes sued upon in this action. The FDIC thus qualifies as a holder in due course as to each of these four notes. Since the affirmative defenses raised by defendants are not among the "real" defenses listed in K.S.A. 84–3–305 ("Rights of a holder in due course"), those defenses are ineffective as against the FDIC.

■ The second basis on which the FDIC may escape the effect of the affirmative defenses pleaded by defendants is the doctrine first enunciated by the Supreme Court in *D'Oench, Duhme & Co., Inc. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Court there held that, as against the FDIC, the maker of a note may not plead as a defense his own scheme to deceive bank regulators (*i.e.*, by asserting that a secret agreement existed between himself and the failed bank). Estoppel under such circumstances does not require proof of actual intent to deceive on the part of the note's maker. Rather, "one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners." 315 U.S. at 460. The elements of *D'Oench, Duhme* estoppel are thus as follows: "(1) the FDIC must be the party against whom the claim or defense is asserted, and (2) the party asserting the claim or defense must have lent himself (3) to a secret agreement (4) that deceived or would tend to deceive the FDIC." *In Re Longhorn Securities Litigation*, 573 F.Supp. 278, 280–81 (W.D.Okla. 1983).

Under defendants' view of the facts, of course, there was no actual intent to deceive bank regulators. However, it is clear that by entering into an oral agreement which contradicted the terms of the written note, the defendants did *lend* themselves to a deceptive secret agreement. Under the

*D'Oench, Duhme* doctrine, then, all of the three affirmative defenses based on that agreement are barred.

As a third ground for rejecting these three affirmative defenses, the FDIC properly relies on the statutory provision found at 12 U.S.C. § 1823(e). That subsection provides as follows:

> No agreement which tends to diminish or defeat the right, title or interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have [been] executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the assets by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Thus, any affirmative defense that flows from an oral agreement is barred by this statute—even if phrased in terms of fraud in the inducement. *F.D.I.C. v. Rodenberg*, 571 F.Supp. 455, 459 (D.Md.1983). That is obviously the case here.

Finally, the FDIC is also entitled to summary judgment on both counts of defendants' counterclaims. The most obvious ground for entering summary judgment on the counterclaims is the fact that they have been brought against an entity (FDIC-Corporate) that is not even a successor to the bank. Only FDIC-Receiver would fit that description. FDIC-Corporate merely purchased certain assets from FDIC-Receiver subsequent to the bank's failing. As a mere purchaser of selected assets, FDIC-Corporate could not possibly be held liable for any contracts entered into, or fraud perpetrated by, agents of the bank.

Moreover, even if the counterclaim allegations had taken the form of third-party complaints against FDIC-Receiver, they would have been unsuccessful. Citing the language used in the *D'Oench, Duhme* opinion, the Ninth Circuit has expressly held that that doctrine applies to the FDIC in both its corporate *and* receivership capacities. *F.D.I.C. v. First National Finance Co.*, 587 F.2d 1009, 1012 (9th Cir. 1978) (citing *D'Oench, Duhme*, 315 U.S. at 458, 62 S.Ct. at 679–80).

IT IS THEREFORE ORDERED that defendants' motion for leave to amend is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted as against all four defendants.

The clerk is directed to enter judgment in favor of plaintiff Federal Deposit Insurance Corporation and:

(a) against defendant Robert B. Vestring in the amount of $50,000.00, plus interest thereon at the rate of 15% per annum from July 2, 1984, to October 2, 1984, and at the rate of 19% per annum thereafter until that judgment is paid in full;

(b) against defendant Nadine C. Vestring in the amount of $50,000.00, plus interest thereon at the rate of 15% per annum from July 2, 1984, to October 2, 1984, and at the rate of 19% per annum thereafter until that judgment is paid in full;

(c) against defendant Stephen J. Vestring in the amount of $46,459.74, plus interest thereon at the rate of 15% per annum from July 2, 1984, to October 2, 1984, and at the rate of 19% per annum thereafter until that judgment is paid in full; and

(d) against defendant Louis B. Vestring in the amount of $50,000.00, plus interest thereon at the rate of 15% per annum from July 2, 1984, to October 2, 1984, and at the rate of 19% per annum thereafter until that judgment is paid in full.

IT IS SO ORDERED.