**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**David P. RITCHIE and Russell E. Florea, Defendants.**

**No. CV 86-0-313.**

United States District Court, D. Nebraska.

Nov. 17, 1986.

Pamela K. Black, North & Black, David A. Beck, FDIC Corp., Omaha, Neb., for F.D.I.C.

David C. Huston, Broken Bow, Neb., for Ritchie.

Stephen Speicher, Lincoln, Neb., for Florea.

## ORDER

BEAM, Chief Judge.

This matter is before the Court upon the motion to dismiss (filing 4) of defendant David B. Ritchie; the plaintiff's motion (filing 5) for leave to file an amended complaint; and the motion (filing 7) to remand or, in the alternative, to dismiss for failure to state a claim of defendant Russell Florea. The Court, after a review of the submitted materials, finds that the motion to file an amended complaint should be granted, and that the motions to dismiss or remand should be denied.

## BACKGROUND

The plaintiff Federal Deposit Insurance Corporation (FDIC) removed this action to federal court from state court pursuant to 28 U.S.C. §§ 1441(b) and 1442(a)(1) as empowered under 12 U.S.C. § 1819. The FDIC, in its corporate capacity, purchased the assets of the insolvent Farmers State Bank, Sargent, Nebraska. Prior to its insolvency, the Farmers State Bank commenced this action for a deficiency judgment against the defendants in the District Court of Custer County, Nebraska. The defendants had guaranteed certain promissory notes executed in favor of the Bank which were in default. The Bank had sold the collateral which secured the notes, leaving a balance due of over $50,000. The District Court of Custer County granted the motion for judgment on the pleadings of defendant Russell E. Florea and the motion to dismiss for failure to state a claim of defendant David B. Ritchie on the ground that neither of the defendants had been given proper notice of the sale of collateral pursuant to Neb. U.C.C. § 9–504. Judgment was entered in favor of the defendants. The Farmers State Bank perfected an appeal (Case No. 85–530) to the Nebraska Supreme Court, and the parties submitted briefs on the issues.

Thereafter, on December 19, 1985, the Department of Banking and Finance of the State of Nebraska declared the Farmers State Bank insolvent and appointed the FDIC as receiver. Also on that date, certain of the assets of the Farmers State Bank were sold to the FDIC in its corporate capacity, including the asset that is the subject of this cause of action.

On March 31, 1986, the Supreme Court of the State of Nebraska entered an order substituting the FDIC as plaintiff in this case. On April 23, 1986, the FDIC timely filed the petition for removal.

## DISCUSSION

Defendants claim that this action is barred by the doctrine of res judicata on

account of the judgment entered by the Custer County District Court, and that Nebraska law, which absolutely bars any recovery for a deficiency judgment from a debtor who received inadequate notice of the sale of collateral, applies in this case and prevents recovery by the FDIC. The FDIC argues that because it is now a party, this case is governed by federal common law rather than Nebraska law, and for that reason neither res judicata nor the Nebraska absolute bar rule is applicable.

■ The determination to apply federal or state law to this matter is controlled by *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). In *Kimbell Foods*, the Court listed three factors which should be considered in determining which law to apply: whether the federal program is one which by its nature requires nationwide uniformity, whether adopting state law would frustrate the specific objectives of the federal program, and whether applying federal law would disrupt commercial relations predicated on state law. *Id.*, at 728–29, 99 S.Ct. at 1458–59.

■ Applying this analysis, the Court finds that the issues in this case should be governed by federal common law. Several factors lead to this conclusion. The FDIC acquired the asset involved here in a purchase and assumption transaction following the insolvency of a Bank. The FDIC in its corporate capacity carries out such transactions to avoid the consequences that ensue when insolvent banks are closed completely and their assets liquidated. The process was explained in *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982):

> While the purchase of a failed bank is an attractive way for other banks to expand their operations, a purchase and assumption must be consummated with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. Because the time constraints often prohibit a purchasing bank from fully evaluating its risks, as

well as to make a purchase and assumption an attractive business deal, the purchase and assumption agreement provides that the purchasing bank need purchase only those assets which are of the highest banking quality. Those assets not of the highest quality are returned to the receiver, resulting in the assumed liabilities exceeding the purchased assets. To equalize the difference, the FDIC [in its corporate capacity] purchases the returned assets from the receiver which in turn transfers the FDIC payments to the purchasing bank. The FDIC [in its corporate capacity] then attempts to collect on the returned assets to minimize the loss to the insurance fund.

*Id.* at 865. Thus, the FDIC becomes what the *Kimbell Foods* Court termed an involuntary creditor. Unlike loans processed through other governmental agencies such as the Small Business Administration or the Farmer's Home Administration, the FDIC is given little or no chance to evaluate the strength of the assets it acquires in a purchase and assumption transaction. The FDIC is forced to assume many of the failed bank's lesser quality assets which are not attractive to private buyers. The reason it so acts is to maintain the going concern value of the failed bank, and accordingly · provide some level of stability and integrity to the nation's banking system. In such a situation, the FDIC should have the benefit of uniformity in the applicable law. The Supreme Court has said, "[t]his Court's decisions applying 'federal law' to supercede state law typically relate to programs and actions which by their nature are and must be uniform in character throughout the nation.... The bank deposit insurance program is general and standardized. In all relevant aspects, the terms are explicitly dictated by federal law." *United States v. Yazell*, 382 U.S. 341, 354, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966). When the FDIC acquires assets pursuant to a purchase and assumption agreement, it becomes an involuntary creditor at a very late stage in the lending

process. This Court finds, therefore, that the FDIC is entitled to pattern its collection activities in reliance upon the uniform application of federal law. *See Gunter,* 674 F.2d at 869; *Federal Deposit Insurance Corp. v. Rodenburg,* 571 F.Supp. 455, 459–60 (D.Maryland 1983); *See also Federal Deposit Insurance Corp. v. Wood,* 758 F.2d 156 (6th Cir.1985); *Federal Deposit Insurance Corp. v. Tito Castro Construction Co.,* 548 F.Supp. 1224 (D.P.R.1982).[1]

Having decided that federal common law controls the issues in this case, this Court must now be decided what that law is. The FDIC relies on *Rodenburg* and the cases cited therein for the proposition that federal law incorporates the rebuttable presumption standard when a sale of collateral is found to be commercially unreasonable. The presumption is that the value of the collateral sold equaled that of the indebtedness assumed. To recover a deficiency judgment, the burden of proof is on the creditor to show otherwise. "The FDIC must prove its damages in such a case: in other words, it must prove that the amount collected in a commercially reasonable sale would have been less than the underlying debt, and it would only be able to collect the difference." *Rodenburg,* 571 F.Supp. at 462.

This Court agrees that the rebuttable presumption standard should apply when the FDIC attempts to recover a deficiency judgment following a commercially unreasonable sale. The Custer County District Court applied Nebraska law, and the abso-lute bar rule when it considered this case. Here, the issue is different, and thus that court's decision imposes no res judicata barrier to this proceeding. Even if Nebraska law did apply, the FDIC has raised issues of waiver and estoppel which would preclude dismissal of the case at this point in its progression.

In summary, the Court finds that federal law governs the issues in this case, and that an action for a deficiency judgment may be forwarded by the FDIC. Certainly, defendants have not shown that there is no set of facts in support of the FDIC's claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Accordingly,

IT IS ORDERED as follows:

1. Defendant David B. Ritchie's motion (filing 4) to dismiss should be and hereby is denied.

2. Defendant Russell Florea's motion (filing 7) to remand, or in the alternative to dismiss should be and hereby is denied.

3. Plaintiff FDIC's motion (filing 5) for leave to file an amended complaint should be and hereby is granted.

---

1. Defendants rely on *United States v. Conrad Publishing Co.,* 589 F.2d 949 (8th Cir.1978) to support the notion that state law should apply. *Conrad Publishing* involved a note that was assigned to the Small Business Administration. Unlike the FDIC, the SBA was given a full opportunity to evaluate the risk it undertook when it entered into the transaction in that case. *Conrad Publishing* is therefore distinguishable on its facts.