**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Robert W. SARVIS, Defendant.**

**Civ. A. No. 87–C–1371.**

United States District Court, D. Colorado.

June 20, 1988.

Linda L. Stamp, Denver, Colo., for plaintiff.

Kevin D. Allen, Waller, Mark & Allen, P.C., Denver, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Plaintiff Federal Deposit Insurance Corporation ("FDIC") commenced this action seeking to recover $25,000, plus interest on a promissory note executed by the defendant Richard W. Sarvis. Jurisdiction exists under 28 U.S.C. § 1345.

These facts appear undisputed: Defendant wanted to invest in a bank holding company called Financial Holdings, Inc. Officers of the holding company referred the defendant to the Aurora Bank ("Bank") to finance the investment. On June 28, 1985 the defendant executed and delivered a promissory note ("Note") to the Bank for the sum of $25,000.00.

Defendant's understanding was that the proceeds would be used to purchase stock in the holding company. He alleges that he did not personally receive the loan proceeds; nor did he receive documentation of a transfer of the loan funds to the holding company. Additionally, he contends that he never received a stock certificate or pledge agreement from the holding company with respect to the loan amount.

On November 1, 1985, the Bank was declared insolvent and the FDIC was appointed receiver. By authority of 12 U.S.C. § 1823(c)(2)(A), the FDIC purchased certain Bank assets, including the Note. FDIC claims principal and interest on the note due and owing as of August 5, 1987. As an affirmative defense, Sarvis asserts that the plaintiff's claim is barred by failure of consideration.

Currently pending is the plaintiff's motion for summary judgment. Under Fed.R. Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Catrett,* the court held that Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Id.*

The parties have briefed the issues and oral argument would not materially assist my decision.

The requirements for a prima facie case in an action on a negotiable instrument are set forth in Colo.Rev.Stat. § 4-3-307(2). That section provides that "[w]hen signatures are admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense." Official Comment 2 provides that "[t]he defendant has the burden of establishing any and all defenses, not only in the first instance but by a preponderance of the total evidence."

Here, the defendant admits execution and delivery of the note. Additionally, the plaintiff has produced the note. Plaintiff also has submitted the affidavit of Kenneth G. Garry to support its motion. That affidavit alleges: (1) that the defendant has failed to make the required payments; and (2) that the plaintiff is "entitled to recover $31,742.35, $25,000.00 being principal, and $6,742.35, interest to January 11, 1988, plus additional interest at the rate set in the note, which is $7.36 per day.[1]

Defendant contends that his affirmative defense of no consideration renders summary judgment inappropriate. More specifically, he asserts that whether the Bank actually paid the loan amount is a genuine issue of material fact.

█ In response, the plaintiff argues that failure of consideration is unavailable as a defense against the FDIC's attempt to collect on the Note. In support of this contention, the plaintiff relies on 12 U.S.C. § 1823(e), and that statute's common law predecessor, *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Section 1823(e) provides:

"No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming as an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously from the time of

its execution, an official record of the bank."

Defendant contends that § 1823(e) in applicable to this action because he "has not asserted any side agreement to defeat the FDIC's claim." (Response, at 6.) However, I disagree with the defendant and find that he *has* asserted a side agreement to defeat the FDIC's claim.

The term "agreement," as used in § 1823(e), is not limited to an express promise to perform an act. *Langley v. FDIC*, — U.S. —, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Court in *Langley* construed "agreement" to include the parties' bargain, as reflected in express or implied conditions upon their performance. The Court stated:

"As used in commercial and contract law, the term 'agreement' often has 'a wider meaning than ... promise,' Restatement (Second) of Contracts § 3, Comment (a) 1981, and embraces ... a condition upon performance. The Uniform Commercial Code, for example, defines agreement as 'the bargain of the parties in fact as found in their language or by implication from other circumstances....' U.C.C. § 1–201(3), 1 U.L.A. 44 (1976). Quite obviously, the parties' bargain cannot be reflected without including the conditions upon their performance.... It seems to us this common meaning of the word 'agreement' must be assigned to its usage in § 1823(e) if that section is intended to fulfill its intended purposes." *Id.* 108 S.Ct. at 401.[2]

Here, the essence of the defendant's argument is that he executed the Note without receiving the loan amount because he "understood that the [loan] proceeds [would be] used to purchase stock in the holding company." (Defendant's response, at 3.) Thus a condition upon the defendant's executing the note was that the Bank

---

1. Defendant has not submitted any affidavits in support of his affirmative defense or otherwise.

2. In *Langley* makers of a note sought to defend against the FDIC's claim on the basis of fraud in the inducement. They alleged that a land purchase and their corresponding note had been procured by the bank's misrepresentations overstating the amount of the land and mineral

acres in the tract, and falsely stating that there were no outstanding mineral leases. 108 S.Ct. at 398. The court held that a "condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the requirements of 12 U.S.C. § 1823(e) attach." *Id.*

would transfer the loan proceeds to the holding company. Under *Langley*, this condition qualifies as an agreement for purposes of § 1823(e).

Clearly, then, § 1823(e) bars the defendant from using the condition as a defense to this action because: (1) the condition tends to diminish the FDIC's right, title or interest in the Note; and (2) the condition was not in writing.

■ I additionally conclude that the rule of *D'Oench, supra*, operates to bar Sarvis' defense of no consideration. In *D'Oench*, the FDIC acquired a note in a purchase and assumption transaction. As in the instant action, the maker asserted failure of consideration as a defense. Specifically, it alleged that pursuant to an undisclosed agreement between it and the failed bank, the bank would not collect on the note. The Court held that this "secret agreement" could not be a defense to a suit by the FDIC because it would tend to deceive the banking authorities. *Id*. 315 U.S. at 460, 62 S.Ct. at 680. The Court reasoned that when the maker "lent himself to a scheme or arrangement whereby the banking authority ... was likely to be misled," that scheme or arrangement could not be the basis for a defense against the FDIC. *Id*.[3]

In the instant action, the defendant signed a facially unqualified promissory note subject to an unwritten "agreement" that the Bank would pay the loan amount to a holding company instead of to the defendant. By executing the note in such a manner, the defendant clearly lent himself to a scheme or arrangement that was likely to mislead the FDIC. Indeed, the purpose behind § 1823(e), and *D'Oench* is

to protect the FDIC from the very type of unwritten "understanding" behind which the defendant here seeks refuge.

As observed by the Court in *Langley:* "One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary ... when the FDIC is deciding whether to liquidate a failed bank, ... or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank.... The last kind of evaluation, in particular, must be made 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services....' " 108 S.Ct. at 401. *See D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679 (there is "a federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans").

The Note here contained no reference to either: (1) the fact that the defendant received no consideration for his execution of the Note; or (2) the defendant's understanding that the Bank would pay the loan amount to the holding company. An FDIC official reviewing the Bank's assets and liabilities after the Bank's collapse would have had no indication that the Note was subject to the affirmative defense of no consideration.

For the reasons stated above, I conclude that both § 1823(e) and *D'Oench* bar Sarvis' defense of no consideration. Thus it is immaterial whether the Bank actually paid

---

**3.** The holding of *D'Oench* has been applied widely where the maker and the bank or a third party entered into an unrecorded "side agreement" or "secret agreement," or where the bank was alleged to have fraudulently induced execution of the note. *See, e.g., FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369 (5th Cir.1988) (guarantors alleged bank officials misrepresented terms of guaranty); *FDIC v. Van Laanen*, 769 F.2d 666 (10th Cir.1985) (defendant estopped from asserting that he had an agreement with the bank that he would not be obligated under assumption agreement); *FDIC v. Inves-*

*tor's Assoc. X, Ltd.*, 775 F.2d 152 (6th Cir.1985) (bank President's oral assurance that maker would not be personally liable on note was not a defense); *FDIC v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir.1981) (assertion that bank had agreed to take a deed in satisfaction of the debt was no defense); *FDIC v. Vestring*, 620 F.Supp. 1271 (D.C.Kan.1985) (oral agreement to substitute low interest, long term note was no defense.); *FDIC v. Burger*, 631 F.Supp. 1141 (D.Kan.1986) (no defense that note was first step in long term financing and was interest free).

the loan amount. Plaintiff has established a prima facie case under Colo.Rev.Stat. § 4–3–307(2), and no material facts are in dispute. Therefore, summary judgment is proper.

Accordingly, IT IS ORDERED that:

(1) Plaintiff FDIC's motion for summary judgment is granted; and

(2) Defendant Robert W. Sarvis shall pay to the plaintiff FDIC $31,742.35, plus interest at the rate of $7.36 per day from January 11, 1988.