Peter G. **BATSAKIS**, et al., Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION**, et al.,
Defendants.

No. G86–272 CA7.

United States District Court,
W.D. Michigan, S.D.

Sept. 1, 1987.

Hubbell & Hubbell by Stuart D. Hubbell, Traverse City, Mich., and Dykema, Gossett, Spencer, Goodnow & Trigg by J. Bruce Donaldson, Bloomfield Hills, Mich., for plaintiffs Carroll and Robert Collins.

Larry C. Willey, Grand Rapids, Mich., and Novack & Macey by Stephen Novack, Eric N. Macey, Norman G. Plotkin, Chicago, Ill., for defendant FDIC.

Foster, Swift, Collins & Coey by James Lozier, Philip T. Savich, Lansing, Mich., for defendant Wausau Ins. Co.

### *OPINION*

BENJAMIN F. GIBSON, District Judge.

Plaintiffs filed this potential class action in state court against the Federal Deposit Insurance Corporation ("FDIC") as receiver ("Receiver") of the failed National Bank and Trust Co. of Traverse City ("NBT") and against the FDIC in its corporate capacity ("the Corporation") seeking damages in connection with the alleged mismanagement of the assets of certain trust funds previously administered by NBT. Plaintiffs also seek declaratory relief against Wausau Insurance Companies ("Wausau") and Employers Insurance of Wausau ("Employers") as insurers of NBT under a trust operation surcharge liability insurance policy. Plaintiffs seek a judgment as to liability as well as to the amount of coverage under the policy. Defendants Corporation and Receiver removed the case to this forum under the provisions of 12 U.S.C. § 1819 Fourth. Now before the Court is a motion to dismiss Counts I, II, and III of the second amended complaint and to strike class action allegations filed by defendants Corporation and Receiver. Also before the Court is defendant insurance companies' motion for summary judgment on Count IV.

## I. MOTION TO DISMISS

Plaintiffs are beneficiaries of two trusts formerly administered by NBT's trust de-

partment. Among the assets of each trust were shares of NBT common stock. In March, 1984, NBT was declared insolvent and FDIC was appointed receiver of the failed bank. National Bank of Detroit Northwest Bank, N.A. ("NBD") purchased certain of NBT's assets from the Receiver, while the Corporation acquired all unacceptable assets not assumed by NBD. NBT's trust department was not acquired by either NBD or the Corporation but was sold to Northwestern Savings & Loan Association ("NWSL") prior to the appointment of the Receiver. As a result of the failure of the bank, the NBT common stock held in plaintiffs' trusts is now valueless. Plaintiffs contend that, during the period from 1980 to the bank's insolvency in 1984, NBT's management was aware of NBT's unsatisfactory financial condition, but consistently denied and misrepresented NBT's economic status. Plaintiffs further contend that NBT's trust department knew or should have known of the Bank's financial condition but it nevertheless continued to imprudently invest in NBT's falling stock. Additionally, plaintiffs contend that they are entitled to an equitable lien against a trust security deposit held by the Treasurer of the State of Michigan, but that NBT either wrongfully assigned such deposit to NWSL upon consummation of the sale of the Trust department or that NBT received a refund of the deposit upon cancellation of NBT's trust powers. As a result, plaintiffs have brought this action against the Receiver and Corporation, as successors in interest to NBT, alleging breach of fiduciary duty, fraud and deceit and wrongful disposition of a state security deposit. The Corporation and Receiver contend that the complaint is legally and/or factually deficient and should be dismissed for failure to state a claim.

The motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6). The Court's inquiry at this point, before the reception of any evidence by affidavit or admission, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value,"

*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). All reasonable inferences which might be drawn from the pleading must be indulged. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 n. 6 (6th Cir.1972).

Provided that the claim for relief fulfills the requirements of Fed.R.Civ.P. 8(a), it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. The Corporation

The Corporation seeks dismissal on the basis that it cannot be liable to plaintiffs because, as a matter of law, it assumed no liabilities of NBT when it purchased the bank's assets from the Receiver. The Court is in accord with the defendant and for the reasons set forth below, the defendant Corporation's motion to dismiss is granted.

Pursuant to statutory authority and case law, the FDIC may often act simultaneously in two separate legal capacities with respect to a failed bank: one as a "receiver" when it sells the bank's assets, and another as a "corporation" when it purchases assets from the receiver which are unacceptable to the assuming bank. 12 U.S.C. § 1823(c)(2); *FDIC v. La Rambla Shopping Center,* 791 F.2d 215 (1st Cir. 1986); *FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978). The FDIC does not act as a receiver after the assignment of the unacceptable assets to itself in its corporate capacity. *Ashley,* 585 F.2d at 162. On the contrary, the FDIC, as a corporation, acquires those assets as an ordinary purchaser for value. *FDIC v. Godshall,* 558 F.2d

220, 222 (4th Cir.1977). As such, the corporation is merely an assignee of the claims and it assumes no liabilities of the receivership. *FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 368 (7th Cir.1979).

In the instant case, the plaintiffs have alleged that the Corporation purchased from the receiver certain assets not purchased by NBD. It is clear from the facts as alleged that the Corporation was acting on its own behalf in its capacity as an insurance corporation when it assumed the unacceptable assets. Applying the precedent cited above, the Court concludes, as a matter of law, that the Corporation was not a successor in interest to NBT and that it cannot be liable for any damages occurring as a result of any action on the part of the closed bank. Any cause of action arising from the actions of NBT would lie only against the Receiver and not against the Corporation. *Accord, FDIC v. Vogel,* 437 F.Supp. 660 (W.D.Wisc.1977). Accordingly, the plaintiffs have failed to state a claim against the Corporation and it is hereby dismissed from this action.

### B. *The Receiver*

#### 1. *Breach of Fiduciary Duty*

In Count 1 of the complaint, the plaintiffs allege, *inter alia,* that NBT breached its fiduciary duty as trustee by providing misinformation and by failing to fully and accurately advise plaintiffs concerning NBT's true financial status, by retaining ownership in stock known to be devalued, by remaining in a position of conflict of interest as trustee of trusts holding NBT stock, and by otherwise failing to act prudently and in good faith with respect to the trust investments. In the event that Trust Department was reasonably uninformed regarding the bank's financial condition, plaintiffs also allege that NBT management breached its duties by failing to disclose NBT's economic status to the Trust Department.

The Receiver contends that Count I should be dismissed as a matter of law because any duty the plaintiffs seek to impose upon the Trust Department is prohibited by federal law. The Receiver argues that the Trust Department must maintain its separateness, commonly known as a "Chinese Wall," from the rest of the Bank's operations in order to comply with the federal securities law prohibition against the use of material inside information when buying and selling securities. *See* The Securities Exchange Act of 1934, §§ 10(b), 16(b), 15 U.S.C. §§ 78j(b), 78p(b). Thus the Receiver contends that NBT could only be deemed to possess information which was generally available to the public. Consequently, the Receiver maintains that NBT management had no duty to advise the Trust Department of the bank's financial condition and in turn, the Trust Department had no duty to act upon or advise plaintiffs regarding the "true financial status of NBT."

Assuming, without deciding, that the defendant's position has merit, the Court nevertheless concludes that the plaintiffs have sufficiently stated a fiduciary breach claim. As previously stated, at this juncture, the Court need only consider whether there are any set of facts which would entitled the plaintiffs to relief. The complaint alleges that the Trust Department knew or should have known of NBT's deteriorating financial status, yet it failed to disclose such information or otherwise prudently act to safeguard the trusts' assets. Accepting these allegations as true, the complaint, on its face, has necessarily stated a cause of action against the fiduciary. The defendant's motion is grounded solely upon the lack of legal duty to divulge "insider information" regarding securities. Although intra-bank communications might well be one way in which the plaintiffs seek to impute knowledge of financial information, it is by no means the only factual basis which could support the plaintiffs' claim. Such information could have been acquired by an analysis of public documents or through independent investigation of NBT's resources. Moreover, the plaintiffs have alleged that NBT breached its fiduciary duty by remaining in a position of conflict of interest with respect to the bank and the trusts. It is axiomatic that a trustee has a duty to safeguard the

interests of the trust against any conflicting personal interests. Thus notwithstanding the allegations concerning imprudent investment in NBT stock, the plaintiffs have sufficiently stated an independent basis for their claim of breach of fiduciary duty. Construing the complaint most favorably to the plaintiffs, the Court cannot conclude, as a matter of law, that the plaintiffs have failed to set forth the elements of a right to relief. Accordingly, the Receiver's motion to dismiss Count I is denied.

### 2. Fraud

The Receiver contends that Count II should be dismissed because it fails to allege with particularity the circumstances constituting fraud and because it fails to establish the elements necessary to state a cause of action for fraud under Michigan law.[1]

To state an actionable claim for fraud, the plaintiff must allege: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813 (1976). Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be stated with particularity. Rule 9 has been construed as requiring, at a minimum, allegations regarding the time, place and contents of the misrepresentations relied upon. *Bender v. Southland Corp.*, 749 F.2d 1205 (6th Cir. 1984).

The Receiver argues that the allegations of fraud do not amount to material representations but are mere opinions regarding future profitability. Further, the Receiver argues that plaintiffs have failed to allege

that any statements were indeed false, and that the complaint fails to identify who made the statements, where they were made and the specific facts which were misrepresented or omitted.

■ It is true, as the defendant contends, that allegations of actionable fraud must contain material representations of fact rather than opinion, prediction or a future promise which was not fulfilled. *Connellan v. Himelhoch*, 506 F.Supp. 1290, 1296 (E.D.Mich.1981); *Hollowell v. Career Decisions, Inc.*, 100 Mich.App. 561, 573, 298 N.W.2d 915 (1980). However, a court must examine the circumstance of the cause in order to determine whether the representations are fact or opinion. *Connellan*, 506 F.Supp. at 1296. Thus defendant's contentions regarding the characterization of the statements at issue would more properly be raised, after development of the record, upon motion for summary judgment. As the matter before the Court is a motion to dismiss, the Court need only determine whether the allegations, on their face, constitute a sufficient basis for a right to relief. Upon review of the complaint in its entirety, the Court is of the opinion that plaintiffs have sufficiently alleged the elements of false and material representations under Michigan law, but that the complaint lacks the requisite particularity under Rule 9.

■ Paragraph 22 of Count II is a general averment which charges that during the period from 1980 to NBT's insolvency in 1984, NBT management and trust department personnel intentionally misrepresented "the actual financial condition of NBT, consistently representing to Plaintiffs and the class that NBT was in sound financial condition when in truth and fact, as was known or should have been known ... NBT's financial condition was rapidly deteriorating...." This paragraph standing alone insufficiently pleads fraud as it fails to specify the contents of the alleged mis-

---

1. With limited exception, federal law applies in cases involving the FDIC. *See* 12 U.S.C. § 1819 Fourth. However, where federal statutory law fails to provide a rule of decision, courts may look to state law in fashioning the appropriate federal common law rule. *American National Bank v. FDIC*, 710 F.2d 1528, 1534 n. 7 (11th Cir.1983). In this instance, the law of Michigan is the appropriate reference with respect to plaintiff's fraud claim.

representations, who made them and where they were made. However, Count II does incorporate the allegations contained in the previous paragraphs. The misrepresentations referred to in Count II appear to be set forth in paragraphs 9, 10, 15 and 19.

Paragraph 9 alleges that NBT management knew of the bank's deteriorating financial condition in 1981 and "in April 1982 publicly 'forecast a profitable 1982', [while] in fact NBT suffered financial losses of $3,444,432 by year end of 1982." Paragraph 10 alleges, in part, that in July 1983, NBT management reported year to date income of $60,607.00 but that subsequently, in September, 1983, NBT acknowledged that it lost $1,138,000.00 during the first nine months of the year.[2] Paragraphs 15 and 19, like paragraph 22, are general references to NBT management's omission of pertinent information and dissemination of misinformation regarding NBT's financial status.[3]

The clear import of plaintiffs' allegations is that NBT management and trust department personnel represented that NBT was financially sound when in fact it was not. The Court cannot say as a matter of law that such representations are mere statements of opinion. Nor can a determination be made at this juncture whether such representations were in fact material. Paragraph 19(b) specifically alleges that all statements, data and communications were false and intended to mislead the plaintiffs. Based on these facts, the Court concludes that plaintiffs have sufficiently alleged a claim for fraud.

■ While the complaint encompasses the elements necessary to maintain an action for fraud, it fails to allege with particularity, the time, place and, to a lesser degree, the content of the misrepresentations. Paragraph 15 states in conclusory term that NBT denied its financial difficulty and represented its economic stability. This allegation simply fails to describe the exact content of the representations, when or where they were made and who made them. Paragraph 22 is deficient for the same reasons. Similarly, paragraph 19(b) fails to enumerate the content of the allegedly false "communications, data and statements" provided to plaintiffs by NBT personnel. Moreover, paragraph 19(b) fails to indicate with specificity, the source of the representations and where they occurred. In short, paragraphs 15, 22, and 19(b) fail to denote whether the representations were oral communications made in person, personal written communications or information provided from some public data source or other document. The inadequacy of these allegations is magnified in this case, where the defendant has no actual knowledge of NBT trust operations but has merely stepped into the shoes of the failed bank. The allegations cited clearly fail to give adequate notice of the basis of the alleged fraud.

2. Paragraph 10 reads:
 10. In 1983 NBT management initially reported to its shareholders in July as follows:
 "We are pleased to report the financial results for the first half of 1983. Year to date income of $60,607.00, or 24 cents per share, reflects continued progress, consistent with our management plan for 1983."
 but subsequently NBT acknowledged that by September 30, 1983, the bank had lost $1,138,-000.00 during the first nine months of the year and, on information and belief, NBT's statement of condition reported an additional loss of $1,200,000.00 for the last quarter of 1983, or a total loss of at least $2,330,000.00 for 1983.

3. Paragraphs 15 and 19(b) read:
 15. During the period of 1980 to the date of NBT's declared insolvency in 1984 NBT's. management was fully aware of the Bank's unsatisfactory financial condition, but throughout that period NBT management denied that the Bank was in financial difficulty and consistently reported to Plaintiffs and NBT shareholders that the Bank was economically sound and that there was no reason for concern.
 19. During the period of 1980 to date, though the malfeasance, misfeasance and nonfeasance of its officers and employees NBT breached its fiduciary duties to Plaintiffs and other members of their class by the following:
 b. Providing Plaintiffs and other members of their class with misinformation concerning the management and financial situation of NBT which communications, data and statements were false, inaccurate or incomplete and intended to mislead them;

Paragraphs 9 and 10 do specify, in quotations, the content of alleged misrepresentations but they too are deficient as far as indicating the source of the quoted materials and when and where such statements were made. Thus paragraphs 9 and 10 also fail to satisfy the requirements of Rule 9. As the complaint does evince, to some degree, the content of some representations upon which the plaintiffs rely, the Court in its discretion, will grant the plaintiffs leave to file an amended complaint, within thirty days, to cure the pleading defects cited herein. Accordingly, defendant's motion to dismiss is denied without prejudice to renew.

### 3. *Wrongful Disposition of State Security Deposit*

Plaintiffs contend that they were intended to be protected by a trust security deposit held by the State of Michigan and they seek to assert a lien or equitable trust against such deposit or the proceeds therefrom in order to realize payment on their claims. Count III purports to state a claim based upon the alleged wrongful assignment, by NBT to NWSL, of the security deposit or based upon NBT's alleged wrongful receipt of a refund of the deposit upon cancellation of its trust powers.

The Receiver contends that Count III should be dismissed for several reasons: (1) failure to join NWSL as a necessary party to whom the security deposit is alleged to have been transferred; (2) lack of an independent right of action for wrongful disposition of the security deposit under the security deposit statute, M.C.L.A. § 487.484; (3) lack of standing to assert a lien under the Statute; (4) failure to allege

facts to support an equitable lien on the security deposit.

■ The Banking Code of 1969 § 184, M.C.L.A. § 487.484 provides in part that a security deposit is required of a bank as a prerequisite to the bank's exercise of its trust powers and that such deposit shall be held as security for trust creditors.[4] Courts construing similar provisions have held that the such deposits are also subject to liens by trust beneficiaries as security for their interests. *Carcaba v. McNair*, 68 F.2d 795 (5th Cir.1934); *Marvin v. First National Bank of Aurora, Ill.*, 10 F.Supp. 275 (D.C.Ill.1935). Thus this Court concludes that plaintiffs are within the class of persons protected by section 487.484 and that they have standing to assert a lien against the security deposit. However, assuming that plaintiffs have standing to assert a lien against the deposit, the Court nonetheless concludes that no independent right of action exists for the wrongful disposition of the security deposit.

■ Plaintiffs have not pointed to any provision of the statute or any trust document which gives rise to a duty, by the bank, to preserve the deposit upon sale or cancellation of its trust powers. Moreover, the statute fails to provide a separate right to damages in the event that the deposit is unavailable. A review of the statute and related case law leads the Court to conclude that the statute was intended to provide a source of funds from which to satisfy trust claims brought by trust beneficiaries and other trust creditors. *See Marvin*, 10 F.Supp. at 279. Absent express language from the Michigan legislature, the Court declines to construe the statute

---

**4.** M.C.L.A. § 487.484 provides in pertinent part:
487.484. Deposit of securities as pre-requisite to exercise of trust powers
 Sec. 184. (1) Before any bank has commenced exercising trust powers, it shall deposit with the state treasurer securities of a value equal to not less than 50% of the amount of its capital stock or $500,000.00, whichever is the lesser. The securities shall be obligations of the United States, obligations which are guaranteed fully as to principal and interest by the United States, general obligations of this state or of any political subdivision thereof or other securities approved by the commissioner and shall be held by the state treasurer, in trust, as security for the trust creditors of the bank....
The existence of such deposit and the amount thereof shall be considered by any court in connection with the requirement of the court with respect to the giving of security by the bank for the discharge of its obligations in the execution of the office of executor, administrator, trustee, receiver or assignee, or guardian of any minor, incompetent person, mental incompetent or any person subject to guardianship.

as implying a property interest in the security deposit funds which gives rise to an independent cause of action.[5] *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Any injuries suffered by plaintiffs in this case arise not from the wrongful disposition of the security deposit, but from the failure of the bank, as trustee, to exercise its fiduciary duties. Thus the proper cause of action to redress plaintiffs injuries has already been alleged in Counts I and II. Having concluded that the deposit is in effect a remedy and that no independent right of action exists for its wrongful disposition, defendant's motion to dismiss Count III is granted.

### 4. *Class Action Allegations*

As a final matter, the Receiver contends that plaintiffs' class action allegations should be stricken for failure to comply with Federal Rule of Civil Procedure 23. Plaintiffs purport to bring this action on behalf of themselves and other beneficiaries of trusts previously administered by NBT that contained NBT common stock.

In order to maintain a class action, the pleader must establish the following four criteria: (1) that the class is so numerous that joinder of all members is impractical; (2) that there are common questions of law or fact; (3) that the claims or defenses of the representative parties are typical of those of the class; (4) that the representatives will fairly and adequately protect the class interests. Fed.R. Cir.P. 23(a). In a prospective class action, the complaint should allege the existence of necessary facts showing that the prerequisites of Rule 23(a) have been satisfied. *Peak v. Topeka Housing Authority, City of Topeka,* 78 F.R.D. 78 (D.Kan.1978). *See also Sedlarik v. General Motors Corp.,* 54 F.R.D. 230 (W.D.Mich.1971). Where factual allegations appear to support the inference of the existence of a class, a court can find Rule 23 satisfied without the necessity that its criteria be specified on the face of the complaint. However, where the complaint merely alleges in conclusory fashion that the Rule 23 prerequisites have been met, the court cannot make such a determination. *Peak,* 78 F.R.D. at 83.

In the instant case, contrary to plaintiffs' assertions, the facts alleged are insufficient as a matter of law, to satisfy the prerequisites of Rule 23. The complaint lacks any indication as to the size of the potential class, such that the Court could infer that joinder of all members would be impractical. In fact, the only reference to the identity and number of class members is in paragraph 6(c) which states generally that the trust department held common stock for "other individuals, entities and trusts who are members of the class." Moreover, there are no factual allegations to support a finding that there are common questions of law or fact among the prospective class.

Although paragraph 5 purports to set forth similarities between plaintiffs and other potential class members, like paragraph 6(c), its allegations are general in nature. Paragraph 5 alleges that NBT was trustee of the Batsakis and Collins Trusts and that NBT was also trustee "of other trusts having similar assets and responsibilities at all times pertinent to the allegations herein." Although the complaint alleges that the trusts of both plaintiffs and potential class members held NBT common stock, the complaint fails to allege any other facts from which to infer that the factual bases of the plaintiffs' claims are typical or sufficiently similar to those of the purported class members. Like plaintiffs' individual claims, *see* Section I(B)(2), *supra,* the prospective class claims have been deficiently pled, thereby rendering any meaningful comparison impossible.

Similarly, the lack of factual allegations concerning the class hampers any determination as to whether the plaintiffs can adequately and fairly protect the class interests. In conclusion, the complaint does lit-

5. In any event, absent a lien which had already attached prior to the alleged disposition of the funds, plaintiffs have no vested interest in the funds on which to base any independent cause of action. Any interest which may exist would be merely anticipatory.

tle more than state in conclusory terms that the requirements of Rule 23 have been met. However, the Court notes that a class action might be appropriate should the plaintiff set forth sufficient facts to support its contentions. Accordingly, the Court, in its discretion, will grant the plaintiffs thirty days to amend the complaint to set forth the factual basis supporting its class action allegations. Accordingly, defendant's motion to strike is denied without prejudice to renew.

## II. MOTION FOR SUMMARY JUDGMENT

■ Defendants Wausau and Employers are insurers of NBT under a trust operation surcharge liability insurance policy. The plaintiffs contend that the subject matter of the instant litigation is within the coverage of the insurance agreement and that they are entitled to recover, under the policy, for any monetary judgment entered in this cause. Plaintiffs seek a judgment as to liability and as to the amount of coverage under the policy.

Defendants Wausau and Employers seek summary judgment on several bases. First, defendants contend that there is no privity of contract between insurers and injured parties and thus plaintiffs lack standing to bring a direct action against them. Secondly, defendants contend that any claims against them should be dismissed for lack of a case or controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201, as they are grounded upon the contingency of a judgment not yet in existence. Lastly, defendants assert that any action against them is contractually barred by the "no action clause" incorporated in the insurance agreement.

The plaintiffs contend that they are third party beneficiaries to the insurance contract which entitles them to seek declaratory relief to establish coverage under the policy. Further, plaintiffs contends that

the no action clause does not bar a cause of action for declaratory relief.

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1603, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device ... Diapulse,* 527 F.2d 1008, 1011 (6th Cir.1976). In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962). Even if the basic facts are not disputed summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *E.E.O.C. v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (6th Cir.1970).

Assuming, without deciding, that plaintiffs are third-party beneficiaries to the insurance contract or that they otherwise have standing to sue, and even assuming that there is an actual case or controversy under the Federal Declaratory Judgment Act, the Court nevertheless concludes that this action is contractually barred as premature.

The insurance agreement at issue expressly provides that no cause of action against the insurance company may be maintained until after the amount of loss in excess of the deductible has been determined either by judgment or decree against the insured or by agreed settlement.[6] Such

---

6. Paragraph 7 of the insurance contract provides:

 7. ACTION AGAINST THE COMPANY
 No action shall lie against the Company unless, as a condition precedent thereto, there

shall have been full compliance by the Insured with all of the terms of this policy, nor unless brought within twelve months after the amount of loss in excess of the applicable deductible amount shall have been finally de-

"no action clauses" have been upheld as valid and consistent with Michigan public policy which militates against premature actions against liability insurers. *Pitcairn v. Rumsey*, 32 F.Supp. 146 (W.D.Mich. 1940). *See also Ladwig v. Truck Insurance Exchange*, 498 F.Supp. 161 (E.D.Wisc. 1980).

 Plaintiffs contend that the clause at issue only precludes actions which seek a monetary judgment for losses and that it is inapplicable to actions for declaratory relief as to the rights and liabilities of the parties. Plaintiffs have cited no authority in support of this proposition and the Court declines to adopt such a limited construction of the clause. The policy unequivocally states that *"no action* shall lie against the Company" until liability of the insured has been determined. (emphasis added). The plaintiffs point to no language in the clause which purports to specifically limit the application of this clause to actions for money damages. The prevention of unnecessary expenditure of funds in defense of actions where liability is unestablished is one purpose of no action clauses, and this rationale is no less applicable in the context of an action for declaratory relief than in an action for money damages. Furthermore, the plaintiffs have failed to point to any facts or circumstances which would lead the Court to conclude that some construction other than that mandated by the plain language of the statute should be applied in this case.

Although plaintiffs cite various cases in which no action clauses were not enforced, those cases involve interpretation of various state laws on impleader of insurance carriers or they are otherwise inapposite to this case. Absent either parol evidence justifying a limited interpretation of the contract clause or case authority mandating the same, the Court declines to thwart the legitimate policies supporting no action clauses by construing the instant clause in such a restrictive manner as to exclude actions seeking a declaration as to policy coverage. The Court thus concludes that the plain language of the policy, as a matter of contract, precludes the initiation of this action against defendants Wausau and Employers until such time as the liability of the insured has been determined. Accordingly, defendants' Wausau and Employers motion for summary judgment is granted and they are dismissed from this case.

## III. CONCLUSION

In conclusion, the Court finds that plaintiffs have failed to state any claims against the defendant FDIC in its corporate capacity, accordingly the Corporation's motion to dismiss is granted. The Court further finds that Count I sufficiently states a claim against the Receiver for breach of fiduciary duty, accordingly the motion to dismiss Count I is denied. The Court further finds that Count II fails to meet the pleading requirements of Rule 9, however plaintiffs shall be granted thirty days in which to amend. Accordingly, the motion to dismiss Count II is denied without prejudice. The Court further finds that there is no independent cause of action for wrongful disposition of the state security deposit, accordingly the motion to dismiss Count III is granted. The Court further finds plaintiffs have insufficiently plead a class action, however plaintiffs shall be granted thirty days in which to amend. Accordingly, the motion to strike class action allegations is denied without prejudice. The Court further finds that any cause of action against the insurance carriers is contractually barred as premature, accordingly defendants' Wausau and Employers motion for summary judgment is granted.

termined either by judgment or decree against the Insured or by agreed settlement with the

consent of the Company.