**FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity, Plaintiff,**

v.

**R–C MARKETING AND LEASING, INC. and Richard A. Andolshek, Defendants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity, Plaintiff,**

v.

**NORTHERN FOOD KING, INC., a Minnesota corporation, and Richard A. Andolshek, Defendants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity, Plaintiff,**

v.

**ANDOLSHEK PROPERTIES, INC. (f/k/a Richard Curtis, Inc.) and Richard A. Andolshek, Defendants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity, Plaintiff,**

v.

**Albin H. ANDOLSHEK and Alice L. Andolshek, husband and wife, Defendants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity, Plaintiff,**

v.

**Richard A. ANDOLSHEK and Judy Gale Andolshek, husband and wife, and Lakes Leasing, Inc., Defendants.**

Civ. Nos. 4–88–889, 4–88–890, 4–89–93, 4–89–95 and 4–89–103.

United States District Court, D. Minnesota, Fourth Division.

June 23, 1989.

David J. Lauth, Kim A. Anderson and Christopher J. Riley, Dorsey & Whitney, Minneapolis, Minn., for plaintiff.

Michael C. Mahoney, Wright S. Walling and Scott T. Anderson, Mahoney, Walling & Kelley, P.A., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiff's motion to dismiss defendants' counterclaims, to strike certain of defendants' affirmative defenses and to strike portions of defendants' answers.

## FACTS

Plaintiff Federal Deposit Insurance Corporation (FDIC) is a corporation organized under the laws of the United States, 12 U.S.C. § 1811 *et seq.* Defendants R-C Marketing and Leasing, Inc., Northern Food King, Inc., Andolshek Properties, Inc. and Lakes Leasing, Inc. are corporations organized under the laws of the State of Minnesota. Defendants Richard A. Andolshek, Judy Gale Andolshek, Albin A. Andolshek, and Alice L. Andolshek are residents of the State of Minnesota. The Lakeland State Bank was, prior to December 19, 1986, a banking corporation organized and existing under the laws of the State of Minnesota. In these actions, plaintiff FDIC, in its corporate capacity, seeks to enforce a number of obligations allegedly owed by defendants to the former Lakeland State Bank. Jurisdiction over plaintiff's claims is proper pursuant to 12 U.S.C. § 1819.

The Lakeland State Bank located in Pequot Lakes, Minnesota (the bank) was closed on December 19, 1986 by the Commissioner of Commerce of the State of Minnesota upon a determination that the bank was insolvent. The commissioner appointed the FDIC receiver of the bank, and the FDIC as receiver executed a purchase and assumption agreement with the North-ern National Bank of Bemidji, Minnesota. Pursuant to the purchase and assumption agreement, the Northern National Bank acquired all of the non-classified loan assets of the bank. The FDIC, in its corporate capacity, acquired the classified (*i.e.* defaulted) loan assets of the bank.

The FDIC, in its corporate capacity, has brought these five actions to collect on a number of those defaulted loans. The FDIC also seeks to foreclose its security interests in a variety of real and personal property.

In Civil 4–88–889, the FDIC seeks to collect on a note and a personal guaranty with an outstanding principal balance of $57,821.91.

In Civil 4–88–890, the FDIC seeks to collect on a note, an overdraft, and a personal guaranty with an aggregate outstanding principal balance of $148,999.41. The FDIC also seeks to foreclose a security interest in the defendants' inventory, equipment, accounts and contract rights.

In Civil 4–89–93, the FDIC seeks to collect on two notes and a personal guaranty, with an aggregate outstanding principal balance of $71,843.26. The FDIC also seeks to foreclose two mortgages on real property that secured the notes.

In Civil 4–89–95, the FDIC seeks to collect on five notes with an aggregate outstanding principal balance of $594,619.19. The FDIC also seeks to foreclose two mortgages on real property that secured two of those notes.

In Civil 4–89–103, the FDIC seeks to collect on four notes with an aggregate outstanding principal balance of $437,596.51. The FDIC also seeks to foreclose two mortgages on real property that secured two of the notes, and to foreclose a security interest in an airplane and in the defendants' inventory, equipment, furniture, fixtures and accounts.

The defendants in each of the five actions have responded with nearly identical answers and counterclaims. In four of the five actions, defendants state that they do

not have "sufficient information or knowledge" to admit or deny that they executed the obligations upon which the FDIC has brought suit. This lack of "information or knowledge" is proclaimed even though copies of each of the obligations on which suit has been brought were attached to the complaints served upon defendants. Defendants similarly attest to a lack of knowledge regarding the FDIC's demand for payment and the default status of the obligations. *See* Amended Answer and Counterclaims in Civil 4-88-889, Responses to par. 11, 12, 13, 15 and 16 of the Complaint; Amended Answer and Counterclaims in Civil 4-88-890, Responses to par. 11, 12, 13, 15, 16, 18, 19, 21 and 22 of the Complaint; Joint and Separate Answer and Counterclaims in Civil 4-89-93, Responses to par. 12, 15, 17, 27, 28, 31 and 33 of the Complaint; Joint and Separate Answer and Counterclaims in Civil 4-89-103, Responses to par. 12, 13, 17, 30, 31, 35, 49, 50, 51, 53, 54, 55, 60, 61 and 65 of the Complaint.

Defendants in each of the five cases have asserted nearly identical affirmative defenses. In all five actions, defendants allege that agents of the Lakeland State Bank falsely represented to defendants at or near the time defendants entered into the obligations in question that the obligations would not be enforced. Defendants allege that they relied on these fraudulent misrepresentations in entering into the obligations, and thus assert that the obligations are unenforceable. *See* Amended Answer and Counterclaims in Civil 4-88-889 at par. 9-13; Amended Answer and Counterclaims in Civil 4-88-890 at par. 9-13; Joint Answer and Counterclaim in Civil 4-89-93 at par. 9-13; Answer and Counterclaims in Civil 4-89-95 at par. 10-14; Joint and Separate Answer and Counterclaims in Civil 4-89-103 at par. 9-13. In Civil 4-89-95, defendants allege the additional affirmative defense of failure of consideration. Further, in Civil 4-89-103, defendant Judy Gale Andolshek asserts an affirmative defense entitled "fraud in the factum" in which she alleges that her signatures on certain documents relating to the obligations in question were procured through fraudulent misrepresentations as to the contents of the documents.

In all five of the actions, defendants have brought nearly identical counterclaims. In their counterclaims, defendants allege that the bank induced them to invest in certain properties and to participate in business ventures with the bank by misrepresenting the nature of those properties and ventures, and by threatening to discontinue financing on defendants' existing businesses. Defendants further allege that these investments were structured so that the defendants bore all risks while the bank enjoyed risk free profits. Defendants also allege that the bank exercised control over their businesses, and that the bank failed to disclose its insolvency.

Based upon these allegations, defendants allege that the bank is liable for breach of contract, fraud, and breach of fiduciary duty as well as its share of the losses from joint ventures entered into by defendants and the bank.[1] Through their counterclaims, defendants seek to hold the FDIC liable for the bank's alleged wrongdoing.

Plaintiff FDIC now moves the Court to dismiss defendants' counterclaims, to strike certain of defendants' affirmative defenses, and to strike defendants' answers insofar as they fail to admit or deny matters as to which the defendants obviously have sufficient knowledge to respond. Plaintiff contends that defendants' counterclaims fail to state a claim upon which relief can be granted against the FDIC. Plaintiff further contends that defendants' affirmative defenses of fraudulent misrepresentation, failure of consideration and "fraud in the factum" are insufficient as a matter of law. Finally, plaintiff argues that defendants should be forced to admit or deny matters obviously within their knowledge.

DISCUSSION

I. Background

The FDIC has two methods of accomplishing its duty to pay the depositors of a

---

1. In Civil 4-89-95 defendants assert counterclaims for fraud and breach of fiduciary duty only.

failed bank. *See generally FDIC v. Leach,* 772 F.2d 1262, 1264 (6th Cir.1985); *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); Norcross, *The Bank Insolvency Game: FDIC Superpowers, the D'Oench Doctrine, and Federal Common Law,* 103 Bank.L.J. 316 (1986). The simplest method is to liquidate the assets of the bank and then pay the depositors their insured amounts, covering any shortfall with insurance funds. This option suffers the disadvantages of destroying confidence in the banking system and causing depositors to wait long periods to recover even the insured portion of their funds.

To avoid the disadvantages of liquidation, the FDIC whenever possible employs a "purchase and assumption" transaction in which the FDIC arranges for a financially stable bank to "purchase" the failed bank and reopen it without interrupting banking operations and with no loss to the depositors. A purchase and assumption agreement involves three parties: the receiver of the failed bank, the purchasing bank, and the FDIC as insurer. In many instances, as in the case here, the FDIC is appointed receiver and thus acts in two separate capacities: as receiver and as corporate insurer.

Once the FDIC is appointed as receiver and decides to proceed with a purchase and assumption transaction, the FDIC sells the high quality assets of the failed bank to the purchasing bank. At the same time, the purchasing bank assumes all of the failed bank's deposit liabilities. The FDIC as receiver then sells to the FDIC as corporate insurer the remaining assets of the failed bank which were unacceptable to the purchasing bank. The unacceptable assets often include past due loans of the failed

bank. The purchase price paid by the FDIC in its corporate capacity is transferred to the purchasing bank and makes up the difference between the value of the liabilities assumed by the purchasing bank and the lesser value of the high quality assets purchased by that bank. Thereafter, the FDIC in its corporate capacity attempts to collect on the unacceptable assets it has purchased.

A purchase and assumption transaction benefits all parties. The FDIC minimizes its losses, the purchasing bank receives a new investment and expansion opportunity at low risk, and the depositors of the failed bank are protected from the problems associated with liquidation and retain ready access to their funds. In order to preserve these benefits, a purchase and assumption transaction must be accomplished with great speed, usually overnight. The FDIC must quickly evaluate the failed bank's assets in order to determine the price to be paid by the purchasing bank for acceptable assets and to determine the cost to the FDIC of assuming the unacceptable assets.[2] It is only in this way that the FDIC may avoid an interruption in banking services and preserve the going concern value of the failed bank.

As a practical matter, in order to expeditiously evaluate the failed bank's assets, the FDIC must rely on the books and records of the failed bank. If these records misrepresent the character or value of the failed bank's assets, the FDIC may make errors in determining the price to be paid for the bank's assets in a purchase and assumption transaction.[3] As a result, the FDIC may suffer additional, unanticipated losses. To protect the FDIC from such losses, the Supreme Court has held

**2.** The cost to the FDIC of engaging in a purchase and assumption transaction is relevant because, although such transactions are favored by the FDIC, the FDIC may not employ a purchase and assumption transaction where its cost exceeds an amount reasonably necessary to save the cost of liquidating the failed bank. *See* 12 U.S.C. § 1823(c)(4)(A); *FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634, 638 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). Thus, before the FDIC may exercise its power to engage in a purchase and

assumption transaction, the FDIC must compare the cost of such a transaction to the cost of liquidation. *See Merchants National Bank,* 725 F.2d at 638.

**3.** Misrepresentations contained in the failed bank's records may also cause the FDIC to underestimate the cost of a purchase and assumption transaction, and thus skew the FDIC's comparison under 12 U.S.C. § 1823(c)(4)(A) of the net cost of liquidation.

that a party who has acquiesced in the mischaracterization of an asset on the books of a failed bank is estopped from asserting a defense based on such mischaracterization in an action brought by the FDIC to collect on the asset. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

In *D'Oench, Duhme*, the FDIC had acquired a note executed by the defendant in favor of a bank which ultimately failed. The defendant previously had sold the bank certain bonds which later defaulted. The defendant executed the note in issue to enable the bank to carry the note, instead of the past due bonds, as an asset on its books. The defendant and the bank agreed that the proceeds of the bonds would be credited to the note. Further, the parties agreed that the note itself would not be called for payment.

When the FDIC brought suit on the note, the defendant contended that the FDIC could not recover because the note was given without any consideration and because the parties had agreed that the note would not be collected. The Supreme Court held that defendant could not escape liability on the note based on its asserted defenses. The Court recognized a federal policy of protecting the FDIC against misrepresentations as to the assets of the banks which it insured. The Court held that the defendant, having given a note to the bank with the secret agreement that it would not be enforced, was presumed to know that the presence of the note in the bank records would tend to deceive the FDIC and other bank examiners. Specifically, the Court found that defendant had "lent himself to a scheme or arrangement whereby the [FDIC] was or was likely to be misled." *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681. Accordingly, the Court held that defendant was estopped from asserting lack of consideration or the party's secret agreement as defenses to liability on the note.[4]

Numerous courts have applied the *D'Oench, Duhme* doctrine to defeat defenses to recovery by the FDIC of obligations owed failed banks. *See Norcross*, 103 Bank.L.J. 316, 332 n. 72 (citing cases). Further, the bar to defenses relating to secret agreements was codified by Congress in 1950 with the enactment of 12 U.S.C. § 1823(e) which provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

## II. Motion to Strike Affirmative Defenses

Plaintiff FDIC moves the Court to strike certain of defendants' affirmative defenses as insufficient as a matter of law. Specifically, plaintiff contends that defendants' affirmative defenses of fraud in the inducement, failure of consideration, and fraud in the factum are barred by 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine and accordingly should be stricken as a matter of law.

■ Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may or-

---

4. The holding of *D'Oench, Duhme* applies regardless of whether the defendant actually intended to deceive the FDIC or other bank examiners. *FDIC v. Vestring*, 620 F.Supp. 1271, 1273 (D.Kan.1985). It need only be shown that defendant lent himself to a deceptive agreement. *Id.*

der stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. A rule 12(f) motion to strike defenses is a drastic remedy which is disfavored by the courts and is infrequently granted. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 648 F.Supp. 419, 422 (D.Minn.1986), *aff'd*, 829 F.2d 648 (8th Cir.1987), *cert. granted*, — U.S. —, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988). A rule 12(f) motion to strike will be granted only where the Court is convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed. *H.J., Inc.*, 648 F.Supp. at 422.

### A. Fraudulent Inducement

■ In each of the five cases, defendants have asserted nearly identical affirmative defenses of fraudulent inducement. Defendants allege that agents of the Lakeland State Bank falsely represented to defendants that the obligations at issue herein would not be enforced. Defendants further allege that they relied on these fraudulent misrepresentations in entering into the obligations, and thus assert that the obligations are unenforceable. Typical of defendants' allegations are those of defendant Richard A. Andolshek in Civil 4–88–889:

9. Defendant Andolshek affirmatively alleges that at or near the time the guarantee referred to in Plaintiff's Complaint was entered into, representatives of the Lakeland State Bank promised, warranted, and covenanted to Defendant Andolshek that the guarantee would never be used against Defendant Andolshek by the Bank, and set forth other "conditions" at that time.

10. That the representations referred to in Paragraph 9 above were untrue when made; material to the transaction in question; susceptible to knowledge at the time made; and, upon information and belief, were made with the intent of inducing Defendant Andolshek to execute the guarantee in question.

11. In reliance upon the representations set forth in Paragraph 9 above, Defendant Andolshek entered into the guarantee in question.

12. As a result of the fraudulent misrepresentations referred to above, the guarantee in question is void and unenforceable.

13. Defendant Andolshek affirmatively alleges that he has been damaged by virtue of the fraudulent misrepresentations referred to in Paragraph 9 above, and that he has been caused to incur and will incur in the future expenses in defending himself against the claims brought by Plaintiff, including reasonable attorneys' fees incurred in this case.

Amended Answer and Counterclaims, Civil 4–88–889 at par. 9–13. Plaintiff FDIC contends that this and all similar affirmative defenses are barred by 12 U.S.C. § 1823(e) and the *D'Oench, Duhme* doctrine. The Court agrees.

Defendants' affirmative defenses of fraudulent inducement allege, in essence, that despite the fact that defendants executed written documents evidencing the obligations of defendants to repay the bank for money lent, the parties had oral agreements whereby defendants' obligations would not be enforced. Such agreements clearly are unenforceable under 12 U.S.C. § 1823(e) where they are not embodied in writings that have been duly approved by the board of directors or the loan committee of the bank. *See Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 400–03, 98 L.Ed.2d 340 (1987); *FDIC v. Rodenberg*, 571 F.Supp. 455, 459 (D.Md.1983). Here, defendants do not allege that their agreements were in writing or that they otherwise satisfy section 1823(e). Accordingly, defendants' affirmative defenses of fraudulent inducement are barred as a matter of law.

Defendants' affirmative defenses of fraudulent inducement likewise are barred under the *D'Oench, Duhme* doctrine.[5] The

---

5. The *D'Oench, Duhme* doctrine remains a viable independent basis for invalidating collateral agreements as against the FDIC even after the enactment of 12 U.S.C. § 1823(e). *See FDIC v. Vestring*, 620 F.Supp. at 1273–74; *FDIC v. Powers*, 576 F.Supp. 1167, 1171 (N.D.Ill.1983), *aff'd*,

facts as alleged by defendants in their affirmative defenses suggest that defendants acquiesced in the mischaracterization of an asset on the bank's books. That is, defendants signed documents evidencing a binding obligation, and yet defendants did not intend that the obligations be enforceable. Defendants thus lent themselves to a transaction which would tend to deceive the FDIC and other bank examiners. Accordingly, defendants' affirmative defenses of fraudulent inducement are barred by the *D'Oench, Duhme* doctrine.

Based on the foregoing, the Court will strike defendants' affirmative defenses of fraudulent inducement.

### B. *Fraud in the Factum*

■ In Civil 4–89–103, defendant Judy Gale Andolshek asserts the affirmative defense of fraud in the factum. Defendant alleges

> that the signature allegedly made by her on the note, mortgage, and security agreement referred to in Counts III and IX of Plaintiff's Complaint, by which Plaintiff alleges she is liable to Plaintiff, were procured by fraudulently misrepresenting the true contents thereof; and that Judy Gale Andolshek did not know the true contents thereof.

Joint and Separate Answer and Counterclaims, Civil 4–89–103 at par. 15. Defendant thus asserts that the note, mortgage and security agreement are void and unenforceable. *See id.* at par. 16.

Plaintiff FDIC moves the Court to strike defendant's affirmative defense of fraud in the factum as insufficient as a matter of law. Plaintiff argues that at most, the above-cited allegations constitute the defense of fraudulent inducement which is invalid under section 1823(e) and the *D'Oench, Duhme* doctrine. Plaintiff contends that defendant has not alleged sufficient facts to state properly the defense of fraud in the factum.

In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987), the Supreme Court, in dictum, suggested that

the defense of fraud in the factum would take an instrument out of the coverage of section 1823(e). The Court reasoned that such a defense would render an obligation entirely void, thus leaving no " 'right, title or interest' that could be 'diminish[ed] or defeat[ed].' " *Langley*, 108 S.Ct. at 402, *quoting* 12 U.S.C. § 1823(e). Fraud in the factum is the type of fraud that procures a party's signature to a document without knowledge of its true nature or contents. *Langley*, 108 S.Ct. at 402, *citing* Uniform Commercial Code § 3–305(2)(c), Comment 7, 2 U.L.A. 241 (1977). " 'The test of the defense [of fraud in the factum] is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge.' " *FDIC v. Culver*, 640 F.Supp. 725, 729 (D.Kan.1986), *quoting* U.C.C. § 3–305(2)(c), Comment 7 (emphasis deleted).

■ In this case, defendant Judy Gale Andolshek alleges that her signature was procured on certain documents through fraudulent misrepresentations regarding the contents of the documents. Defendant alleges that she did not know the true contents of the documents she signed. Such allegations clearly are the stuff of which a defense of fraud in the factum is made. Defendant fails to allege, however, that she had no reasonable opportunity to discover the true nature of the documents in question. Further, defendant fails to specify the time, place and content of any alleged fraudulent misrepresentations and the person making such misrepresentations as is generally required by Fed.R.Civ.P. 9(b). Defendant's allegations are thus deficient. It cannot be said, however, that under no set of circumstances could defendant's defense of fraud in the factum succeed. Accordingly, the Court will deny plaintiff's motion to strike defendant Judy Andolshek's affirmative defense of fraud in the factum on the condition that, within thirty days of the date of this order, defendant Judy Andolshek plead this defense with greater particularity as required by

753 F.2d 1076 (7th Cir.1984); *Norcross,* 103 Bank.L.J. 316, 331–32.

Fed.R.Civ.P. 9(b) and in a manner consistent with Fed.R.Civ.P. 11.

### C. *Failure of Consideration*

■ In Civil 4–89–95, defendants Albin Andolshek and Alice Andolshek assert the affirmative defense of failure of consideration. Specifically, defendants allege that: "Plaintiff's claims are barred by virtue of the fact of their [sic] being no consideration passing through the notes referred to in Plaintiff's Complaint." Answer and Counterclaims, Civil 4–89–95 at par. 9. Defendants provide no further factual basis for their defense of failure of consideration. Plaintiff now moves the Court to strike defendants' affirmative defense of failure of consideration as insufficient as a matter of law under the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e).

It seems clear that to the extent defendants' failure of consideration defense relates to a secret agreement between defendants and the bank which would tend to misrepresent the value of a bank asset, the defense is barred under the *D'Oench, Duhme* doctrine. In *D'Oench, Duhme,* the defendant asserted lack of consideration as a defense to enforcement of the note. 315 U.S. at 456, 62 S.Ct. at 679. The Court found, however, that such a defense cannot be raised by the maker of a note whose

> note was designed to deceive the [bank's] creditors or the public [banking] authority or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled.

*D'Oench, Duhme,* 315 U.S. at 460, 62 S.Ct. at 681. *See also FDIC v. Gardner,* 606 F.Supp. 1484, 1488–89 (S.D.Miss.1985).

Title 12 U.S.C. § 1823(e) would bar defendants' affirmative defense of failure of consideration to the extent that such a defense relied on an unwritten collateral agreement. *FDIC v. Vogel,* 437 F.Supp. 660 (E.D.Wis.1977). In *Vogel,* defendants executed personal guarantees in connection with a loan from a failed bank. Upon suit by the FDIC to recover on the guarantees, defendants asserted the defense of failure of consideration. Defendants contended that the guarantees were provided not in exchange for the contemporaneous loan, but rather in exchange for the oral commitment of the bank to extend a future loan; such a future loan was not made by the bank.

The court in *Vogel* found defendants' defense of failure of consideration to be foreclosed as a matter of law. *Vogel,* 437 F.Supp. at 663. The court held that the alleged oral commitment to make a future loan was an insufficient basis upon which to avoid liability on the guarantees. Such an alleged commitment, the court observed, was barred by section 1823(e) as it was not written nor approved by the bank's board of directors or loan committee. *Vogel,* 437 F.Supp. at 663.

Although the above analysis suggests that the defense of failure of consideration is unavailable in a collection action brought by the FDIC in its corporate capacity, defendants argue that at least one court has held the defense to be available in certain limited situations. In *FDIC v. Meo,* 505 F.2d 790 (9th Cir.1974), defendant executed a promissory note to a bank to enable him to acquire shares of the bank's stock. Instead of executing the stock order, the bank directed its brokers to issue voting trust certificates in the name of the purchasers. Defendant never saw the trust certificates, which were held by the bank as security for loan, and was not aware of the manner in which his order had been executed. Still unaware of the misexecution of his order, defendant later signed a new note for the balance due. When the bank was closed due to insolvency, the FDIC sought to recover from defendant on this new note. Not until after the litigation had begun did defendant learn that his order for common stock had not been executed. Defendant sought to avoid liability on the note based on failure of consideration. Plaintiff FDIC argued that defendant was estopped from asserting such a defense under the *D'Oench, Duhme* doctrine.

The United States Court of Appeals for the Ninth Circuit in *Meo* held that *D'Oench, Duhme* did not apply on the facts of the case before it. *Meo*, 505 F.2d at 791–93. The court held *D'Oench, Duhme* inapplicable because: (1) defendant did not enter into any scheme or secret agreement whereby the assets of the bank would be overstated; (2) defendant was wholly innocent of the bank's wrongdoing in issuing voting trust certificates instead of common stock shares; (3) defendant was not negligent in failing to discover the manner in which the stock order was actually executed; and (4) defendant had no knowledge of the failure of consideration. *Meo*, 505 F.2d at 792. Under the circumstances of the case before it, the court held that defendant could successfully assert the defense of failure of consideration.

The Court finds the reasoning of *Meo* to be inapplicable in this case. In *Meo*, the FDIC was acting only as receiver of the failed bank and not in its corporate capacity. Accordingly, the FDIC did not claim the protections of section 1823(e). *See Chatham Ventures, Inc. v. FDIC*, 651 F.2d 355, 361 n. 13 (5th Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Had section 1823(e) been invoked in *Meo*, the result might have been different. Although not explicitly stated in the court's opinion, a footnote suggests that the documents relating to defendant's note did not state that the note was signed in consideration of receipt of the shares. *Meo*, 505 F.2d at 792 n. 2. If the documents were silent on this point, the court might have found that the bank's promise to apply the note proceeds to the purchase of stock was a collateral oral agreement that may not be enforced under section 1823(e). *See Langley*, 108 S.Ct. at 400–02.

In *FDIC v. Webb*, 464 F.Supp. 520, 528 (E.D.Tenn.1978), the court held that when a defendant's note indicates on its face that the consideration given was the loan of money with interest in return for a promise to pay, the defendant cannot argue as a defense that the note was conditioned on some other consideration which subsequently failed. In the case at bar, the notes signed by defendants Albin Andol-shek and Alice Andolshek state that defendants' promise to pay is given in exchange "[f]or value received." *See* Complaint, Civil 4–89–95, Exh. A, C, E, F, G. Thus, any other alleged consideration which may have been promised by the bank is part of an oral agreement which would be barred under section 1823(e). *See FDIC v. Webb*, 464 F.Supp. at 528.

Defendants could argue that no secret or collateral agreement regarding consideration existed, but that the recited consideration (money loaned) was not provided. In such a situation, however, it has been held that by failing to notify banking authorities or to otherwise protest the failure of consideration prior to the institution of a receivership, a defendant has acquiesced in the overstatement of the bank's assets and thus is barred from asserting the defense of failure of consideration under the *D'Oench, Duhme* doctrine. *See FDIC v. Timbalier Towing Co.*, 497 F.Supp. 912, 920–21 (N.D.Ohio 1980).

On a motion to strike brought pursuant to Fed.R.Civ.P. 12(f), a defense may be stricken only if under no set of circumstances could the defense succeed. *H.J., Inc.*, 648 F.Supp. at 422. Due to the exceedingly general allegation of failure of consideration set forth by defendants in Civil 4–89–95, and defendants' failure to articulate the factual basis for its assertion of this defense, the Court has been left to guess at the underlying factual basis for defendants' affirmative defense and to evaluate numerous possibilities. Based on the foregoing analysis, however, it appears that under every conceivable factual circumstance, defendants' failure of consideration defense would be barred. Accordingly, the Court will grant plaintiff's motion to strike defendants' defense of failure of consideration as insufficient as a matter of law.

### III. Motion to Dismiss Counterclaims

In all five of the actions, defendants assert nearly identical counterclaims against plaintiff FDIC. Defendants contend, based on allegations of wrongdoing by the bank, that plaintiff FDIC is liable for breach of

contract, fraud, and breach of fiduciary duty as well as for the bank's share of losses from joint ventures entered into by defendants and the bank.[6] Plaintiff FDIC now moves the Court to dismiss defendants' counterclaims for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

In reviewing a motion to dismiss for failure to state a claim the Court presumes all factual allegations to be true and all reasonable inferences from those allegations are construed in favor of the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir.1986). The appropriate inquiry is not whether plaintiff will ultimately prevail but whether he will be allowed to introduce evidence to support his claims. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. Because dismissal on the pleadings is an extreme remedy it is not favored by the courts and is employed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). *Robinson v. MFA Mutual Insurance Co.*, 629 F.2d 497, 500 (8th Cir.1980).

Pursuant to statutory authority and case law, the FDIC may often act simultaneously in two separate legal capacities with respect to a failed bank: one as a "receiver" when it sells the bank's assets, and another as a "corporation" when it purchases assets from the receiver which are unacceptable to the purchasing bank. *See* 12 U.S.C. § 1823(c)(2); *FDIC v. La Rambla Shopping Center, Inc.*, 791 F.2d 215 (1st Cir.1986); *FDIC v. Lauterbach*, 626 F.2d 1327, 1330 n. 4 (7th Cir.1980); *Batsakis v. FDIC*, 670 F.Supp. 749, 752 (W.D.Mich.1987). When the FDIC in its corporate capacity purchases unacceptable assets from the FDIC as receiver, the FDIC-corporate is not deemed a successor in interest to the failed bank, nor does it assume the liabilities of the receivership. *Batsakis*, 670 F.Supp. at 752–53; *FDIC v. Vestring*, 620 F.Supp. 1271, 1274 (D.Kan. 1985); *FDIC v. First Mortgage Investors*, 485 F.Supp. 445, 452 (E.D.Wis.1980). The FDIC-corporate cannot be held liable for any contracts entered into, or fraud perpetrated by, agents of the bank. *Batsakis*, 670 F.Supp. at 753; *Vestring*, 620 F.Supp. at 1274. Rather, any claims arising from actions of a failed bank and its agents are enforceable only against the FDIC-receiver. *FDIC v. Condit*, 861 F.2d 853 (5th Cir. 1988); *Batsakis*, 670 F.Supp. at 753; *FDIC v. Vogel*, 437 F.Supp. 660, 665 (E.D.Wis. 1977). Accordingly, defendants' counterclaims, which are asserted against plaintiff FDIC-corporate, must be dismissed for failure to state a claim. *See Vestring*, 620 F.Supp. at 1274.

Defendants ask that if the Court finds their counterclaims may be asserted only against the FDIC as receiver, the Court allow defendants to interpose a third-party complaint against the FDIC-receiver in this action. Defendants note that such a ruling would necessitate modification of the magistrate's pretrial order which set a cutoff date of May 1, 1989 for third-party pleadings.

The Court declines to allow defendants to interpose a third-party complaint against the FDIC-receiver in this action. Defendants' claims against the FDIC-receiver arise under state law, *see La Rambla*, 791 F.2d at 220–21, and are properly pursued in state court.

Based on the foregoing, the Court will grant plaintiff's motion to dismiss defendants' counterclaims.

IV. Motion to Strike Portions of Defendants' Answers

Plaintiff FDIC moves the Court to strike certain portions of defendants' answers and to deem plaintiff's allegations admitted. Plaintiff bases this motion on defendants' alleged failure to admit or deny mat-

---

**6.** In Civil 4–89–95, defendants assert counterclaims for fraud and breach of fiduciary duty only.

ters obviously within their knowledge. In response to plaintiff's motion, defendants have submitted in their responding memorandum detailed answers specifically admitting or denying the matters in question.[7] In light of these responses, plaintiff in its reply memorandum has withdrawn its request for a detailed ruling on its motion with two exceptions. Plaintiff argues that defendant Richard Andolshek's responses in Defendants' Memorandum at 25, par. 4; and 27, par. 8, are insufficient. In those responses, defendant admits executing certain guarantees but refuses to accept plaintiff's characterization of the obligations as unconditional guarantees given for valuable consideration. *See* Complaint, Civil 4–88–889 at par. 15; Complaint, Civil 4–88–890 at par. 21.

The Court finds defendants' responses to be adequate. The legal characterization of the obligations is properly determined by the Court on a motion or at trial. As explained above, the Court has determined that defendants may not assert the affirmative defense of failure of consideration as a defense to liability in this case. Therefore, to the extent that defendants' responses seek to support such a defense, the responses are of no effect. Whether or not the obligations in question are subject to any conditions is a determination yet to be made.

Based on the foregoing, and upon all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that:

1. plaintiff's motion to strike defendants' affirmative defenses of fraudulent inducement asserted in all five actions is granted;

2. plaintiff's motion to strike defendants' affirmative defense of failure of consideration asserted in Civil 4–89–95 is granted;

3. plaintiff's motion to strike defendant Judy Andolshek's affirmative defense of fraud in the factum asserted in Civil 4–89–

103 is denied; defendant Judy Andolshek shall re-plead this defense with greater particularity;

4. plaintiff's motion to dismiss defendants' counterclaims is granted; and

5. plaintiff's motion to strike certain portions of defendants' answers is denied.

---

**7.** By stipulation of the parties filed with the Court on June 9, 1989, defendants have amended their answers to reflect the specific responses submitted by defendants in their memorandum opposing plaintiff's motion to strike.